# DENNIS R. TAYLOR *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 981, September Term, 1981.]

*Decided April 12, 1982.*

The cause was argued before MOORE, LOWE and WILNER, JJ.

*John J. Dilli, Jr.,* for appellant.

*L. William Gawlik, Assistant City Solicitor of Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor of Baltimore City,* and *Sheldon H. Press, City Solicitor of Baltimore City,* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

This appeal is expressly limited to an Order of the Baltimore City Court dated May 28, 1981. The order appealed from denied appellant's motion for a new trial of an administrative appeal to that court, which had affirmed the decision of a claims examiner of the Fire and Police Employees Retirement System. Although the original appeal from the Claims Examiner's decision to the Baltimore City Court questioned findings of fact, as well as construction of law by the Examiner, appellant's motion for new trial was limited solely to the court's construction of the retirement laws regarding disability benefits. By appealing from the order denying his motion, not only does appellant limit himself to that which was addressed upon that motion, *Carter v. State,* 286 Md. 649, 651 (1979), but he places the burden upon himself of convincing this Court that the trial judge abused his discretion in denying the motion for new trial. His gamble was successful. The judge did abuse his discretion by misconstruing the law applicable to the case and sustaining the construction by the Claims Examiner as a proper interpretation of the law. We will remand this case

to the Baltimore City Court, directing it to remand to the Claims Examiner for a determination of appellant's entitlement to benefits under proper construction of the law.

Appellant, Dennis R. Taylor, had been employed as a Baltimore City fire fighter since July 20, 1970. On January 5, 1978, he suffered an injury to his left elbow. According to a Statement of Undisputed Facts, appellant applied for a "special" disability retirement on October 3, 1979. His application was denied.

When appellant's condition worsened, he apparently filed a subsequent application (but it is not in the record before us). The Claims Examiner decided that

> "the claimant is physically incapacitated for further performance of the duties of his job classification in the employ of Baltimore City",

and that the incapacity "is considered to be permanent". While permanent incapacity is required for either an "ordinary" or "special" disability retirement, the Examiner denied the more remunerative "special" disability claim,[1] because the incapacity

> "is still not considered to be totally incapacitating based on the medical evidence."

Presumably for the reason that the incapacity was "not . . . totally incapacitating", the Examiner decided that appellant

> "is ineligible for Special Disability Retirement but is eligible for Ordinary Disability Retirement."

The Claims Examiner's opinion was affirmed upon appeal by an opinion of the Baltimore City Court on April 23, 1981 which was modified by an opinion dated May 28, 1981, denying the motion for a new trial. Erroneously assuming in

---

1. In the present case, appellant would be entitled to receive sixty-six and two-thirds (66⅔) percent of his former salary tax free if he were found to qualify for "special" disability benefits. On the other hand, based on a formula involving tenure, he would only be entitled to receive approximately twenty-six (26) percent of his former salary tax free under the "ordinary" disability benefits.

both opinions that appellant's incapacity had been found by the Examiner to have been "sustained in the performance of his duties . . .", the judge addressed a single issue of statutory interpretation. He pointed out that the two relevant sections in Article 22 of the Baltimore City Code relating to disability retirement benefits are § 34 (c) and § 34 (e); the former dealing with "Ordinary disability retirement benefits" read (prior to 1979) as follows:

"Section 34 (c).

Ordinary disability retirement benefit. Any member who has acquired five (5) or more years of service and who has been determined by a claims examiner to be *mentally or physically incapacitated for the further performance of the duties of the member's job classification* in the employ of Baltimore City, *and* that such incapacity *is likely to be permanent,* shall be retired by the Board of Trustees on an ordinary disability retirement, not less than thirty (30) and not more than ninety (90) days next following the date of filing his application for ordinary disability retirement benefits." (Emphasis added).

In 1979, the following language was added:

"For all claimants who became members of this system on or after July 1, 1979, and have been determined to be qualified for an ordinary disability benefit, the following shall be applicable:

If the claims examiner determines that the member has suffered any permanent disability which prevents the member from the further performance of the duties of the member's job classification in the employ of the City of Baltimore, the City shall within thirty (30) days of the expiration of the appeal period as provided in Section 33(1), or, if an appeal is taken, within thirty (30) days of the final determination of all appeals, refer the member to the Civil Service Commission for vocational coun-

seling and job evaluation to determine whether the member is suitable for re-employment with the City in another position at the same rate of compensation as he was receiving in his last position.

During the period such member is being counseled, he shall temporarily receive the ordinary disability benefits under this section until such time as the Civil Service Commission has determined that either the member is suitable for re-employment in another position or that the City cannot offer any alternative employment. If the determination by the Civil Service Commission is that the member is re-employable, the member shall either be re-employed within one year and the award of ordinary disability benefits terminated, or else the member shall be retired on ordinary disability retirement subject to the other provisions of this subtitle. If the determination by the Civil Service Commission is that the member is not re-employable, the member shall be retired on ordinary disability retirement subject to the other provisions of this subtitle."

The briefer section dealing with "Special disability benefits" was, and remains, as follows:

"Section 34 (e).

(e) Special disability benefits. Any member who has been determined by the claims examiner to be *totally and permanently incapacitated for the further performance of the duties of his job classification* in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without willful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement." (Emphasis added).

In his May 28 opinion, the judge simply explicated the

conclusion implied in the decision of the Claims Examiner that the only substantial distinguishing feature of the two sections was that § 34 (e) expressly requires that a claimant be "totally" incapacitated for the further performance of the duties of his job classification, while § 34 (c) does not use that adjective "totally". The judge recognized, however, that prior to 1979, when the Board of Trustees of the Employees Retirement System of Baltimore City was hearing such cases, it had interpreted the term "incapacitated" to mean "totally incapacitated",

> "when it was the Board's responsibility to make the determinations, it passed over the 'total' incapacity language and focused on the 'in the course of the actual performance of duty, without wilful negligence . . .' language. This is a reasonable interpretation because the dictionary definition of 'incapacity' includes the concept of 'totally' within its scope, so that it could be argued that there is no substantive difference between 'incapacity' and 'total incapacity'. It would then follow under this view that the only difference between Subsections (c) and (e) is the 'in the course . . . of duty' or not 'in the course . . . of duty' distinction in fact adopted by the Board."

He raised for recognition the

> "well established rule of law in Maryland that the consistent and long-standing interpretation of a statute by the agency charged with its enforcement is 'strongly persuasive' and should not be disregarded except for 'weighty reasons,' "

then lowered it as inappropriate because

> "the administrative interpretation will not be considered unless the statute in question is ambiguous on its face. *Atlantic, Gulf and Pacific Company v. State Department of Assessments and Taxation,* 252 Md. 173, 249 A.2d 180 (1969)."

Referring in part to the 1979 amendment to the "ordinary" disability provision, § 34 (c), noted above, the judge explained that

"as of July 30, 1979, the City Council changed the system somewhat. The responsibility for hearing claims and making determinations thereon was vested in a group of Claims Examiners appointed for that purpose. Subsection (c) was amended by the addition of a provision requiring claimants found eligible for 'ordinary' benefits under that subsection to be referred to the Civil Service Commission for vocational counseling and job evaluation."

He pointed out that since their assumption of responsibility for hearing claims,

"[t]he evidence indicates that the Claims Examiners have interpreted the difference between Subsections (c) and (e) to rest not on the 'in the course ... of duty' *or* not 'in the course ... of duty' distinction but, rather, on a 'total' incapacity *or* less-than- 'total' incapacity distinction. The Claims Examiners appear to interpret the 'in the course of the actual performance of duty, without wilful negligence . . .' language to be a minimum requirement for 'special' disability benefits rather than a litmus test between Subsections (c) and (e). The shift of emphasis would be consistent with the addition of the vocational counseling and job evaluation provision because a claimant who is less than 'totally' incapacited could reasonably be referred for such counseling and evaluation, whereas it would make no sense to refer a 'totally' incapacitated claimant for vocational counseling and job evaluation. It is also reasonable to conclude that the City Council meant to require all less-than- 'totally' incapacitated claimants to be referred for vocational counseling and job evaluation regardless of whether their incapacity resulted from the performance of duty or not."

He concluded:

> "Therefore, this Court finds that while it was formerly the practice to automatically award 'Special' disability benefits under Subsection (e) to claimants injured in the line of duty, this is no longer the case. Since Appellant has not disputed the Claims Examiner's finding of fact that he is not 'totally' disabled, this Court must affirm the Claims Examiner's determination that Appellant is not entitled to 'special' disability benefits under Article 22, Section 34 (e), of the Baltimore City Code."

In his initial opinion of April 23, the judge commenced his deliberative conclusion by acknowledging that:

> "In construing this statute, this Court must first look to its plain language. Only when the language is ambiguous does a Court need to look to the intent of the legislature and consider the overall legislative scheme. *Koyce v. State Central Collection Unit,* 289 Md. 134 (1980)."

He then conceded that

> "in ordinary usage 'incapacitated' means 'totally incapacitated' unless otherwise modified,"

which, from his prior recognition of the law, seemingly obviated both the need and the right to seek legislative intent. He added, however, that

> "this meaning does not appear to have been intended by the legislature in drafting the statutes in question."

He provided two reasons for discerning a legislative meaning contrary to what seemingly appeared unambiguous to him. That which compelled him to ignore the "plain language" earlier acknowledged was that

> "the legislature took the trouble to draft two separate subsections, one dealing with claimants found

to be 'mentally or physically' incapacitated, and one dealing with claimants found to be 'totally' incapacitated. The two subsections provide for different levels of retirement benefits. In the present case, Appellant would, under Subsection (c), receive, tax free, twenty-six (26) percent of his former salary or, under Subsection (e), tax free, sixty-six and two-thirds (66⅔) percent of his former salary. In addition, Subsection (c) requires that a claimant found to be permanently disabled must be referred to the Civil Service Commission for vocational counseling and job evaluation to determine whether he is suitable for re-employment with the City. Subsection (e) [special disability] makes no such provision, assumingly because there is no point in referring a 'totally' incapacitated person for vocational counseling."

Our review of the statute compels our disagreement with the interpretation of the Baltimore City Court in this instance. We are persuaded more by its opinion in *Hackley v. Mayor and City Council of Baltimore, et al.,* Baltimore City Court, File No. 1-105843, Docket 25P/9 (April 1, 1981), wherein (we are told by the judge in this case)

"the Court found that there is no real difference between Subsections (c) and (e) with respect to the level of disability required. The Court [in *Hackley*] reached this conclusion by finding that the dictionary definition of 'incapacity', unless the word is modified in its scope, includes the concept 'totally'. Therefore, a finding that a claimant is 'incapacitated' is the same as a finding that a claimant is 'totally' incapacitated."

In particular regard to appellant's claim, initially we must note that because it preceded the 1979 amendment, it should have been judged upon the construction of the statute as it was intended at that time. The judge held that the Board's interpretation prior to 1979 was reasonable at that time, and

he further acknowledged that such long-standing administrative interpretation should not be disregarded except for weighty reasons. Apparently, however, the "weighty reason" that caused him to reject the Board's interpretation for the more recent views of the newly appointed claims examiners was the 1979 amendment relating to vocational rehabilitation counselling and job evaluation, which coincided with the creation of the examiners. Thus, even if that analysis of post-1979 legislative intent had been accurate, the judge would still have been wrong in not applying the pre-1979 interpretation that he found reasonable prior to the amendment.

Even if the former version applied, the 1979 amendment accords with the entire statutory scheme and altered its purpose not one whit. To the contrary, it enlarged upon it by setting forth a procedure for vocational counselling, providing a better opportunity for reemployment of its tenured incapacitated employees in other city job classifications.

The judge's analysis of legislative intent of the post-amendment statute was inaccurate. Both he and the Claims Examiner read far too much into the fact that § 34 (e) used the redundant adjective "totally", while § 34 (c) did not. Such reasoning, like the maxim "expressio unius est exclusio alterius",[2] is not a rule of law but is merely an auxiliary application of logical analysis to assist in determining legislative intent. Such auxiliary aids should be used with caution and should never be applied to override a more obvious purpose or visible scheme. *Cf. Kirkwood v. Provident Savings Bank,* 205 Md. 48, 55 (1954). In this instance, to apply such logic would implicitly inject into § 34 (c) the adjective "partial" or some synonymous modifier for the negative-transitive verb "incapacitated", which the judge conceded means "totally incapacitated . . . in ordinary usage . . . unless otherwise modified." Not only have we been repeatedly admonished by the Court of Appeals that, in

---

2. Applied by the judge when reasoning that the 1979 amendment provided for vocational evaluation to the ordinary disability group, § 34 (c), and not to the special disability retirees, § 34 (e).

construing statutes, words must be interpreted according to their common acceptance (*e.g., Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 15 (1981); *Parkinson v. State,* 14 Md. 184, 196-197 (1859)), we are told with equal consistency that we may not insert or omit words to make a statute express an intention not evidenced in its original form. *Amalgamated Ins. v. Helms,* 239 Md. 529, 535 (1965).

The facts found by the Claims Examiner upon which the judge predicated his statutory interpretation were that the claimant was:

> "incapacitated for further performance of the duties of his job classification."

That finding carried the claimant over the first hurdle of entitlement in either section since the identical language is in both. She then held that the "incapacity is considered to be permanent". That finding is also a requisite for entitlement to either special or ordinary benefits, carrying the claimant over the second hurdle.

The Examiner's (and ultimately the judge's) reason for denying the special benefits was that the incapacity "is still not considered to be totally incapacitating . . . ." This would contradict the prior finding unless it was intended to imply that the claimant was being denied special benefits because, although he was incapacitated from "the performance of the duties of his job classification," he was still employable in some other type of employment, or under some other job description.

Assuming that is what the Examiner meant, and is the predicate for the court's analysis, we fail to see where either section of the statute *requires* that the claimant be incapacitated from performing *any* work, other than that which is within his job classification. In fact, by placing a limit on how much he may earn in addition to his benefits, § 34 (g) (2) contemplates that upon disability retirement (in either category) the retiree may work elsewhere.[3]

---

**3.** "§ 34 (g) Re-examination of beneficiaries retired on account of disability.

The judge's interpretation of this statute was similar to the scheme of the Workmen's Compensation Statute, Md. Ann. Code, Art. 101, which provides both for those who are totally disabled as well as those partially so as a result of their employment. But there the Legislature clearly explicated both scheme and purpose, without courts having to inject words or omit them as surplusage. Here, the judge not only injected a modifier by implication (the concept of "partial" incapacity), but omitted the limiting object of the key transitive verb "incapacitated" in one section, giving the same phrase emphasis in the other section. In order to reach the result that § 34 (e) (Special Disability) required total incapacity to perform *any* job (which his interpretation provided), the judge necessarily ignored or discounted the prepositional phrase following "incapacitated," which provided its object:

---

. . .

(2) A disability retiree may, without reduction of his retirement allowance, earn annually an amount, hereinafter referred to as 'earnings,' equal to the rate of the annual compensation being paid currently to persons in the same grade and step as the retiree was at the time of his retirement, plus the amount of any longevity payments currently being paid for the length of service the retiree had at the time of his retirement, said rate of compensation plus longevity payments, if any, hereinafter referred to as 'base amount'. Should such a retiree earn an annual amount which is greater than his base amount, the pension otherwise payable to him shall be reduced in the following manner: For the first $5,000 of earnings in excess of the base amount a reduction of $1.00 in pension benefits shall be made for each $2.00 earned. For any earnings in excess of $5,000 over the base amount, a reduction of $2.00 in pension benefits shall be made for each $5.00 earned. In the calendar year of retirement the base amount shall be prorated on a monthly basis. Benefits which may be payable to a beneficiary of a deceased disability retiree under the provisions of this subtitle, shall not be reduced by reason of any excess earnings by said retiree, and the base for calculating said beneficiary's benefits shall be the total unreduced retirement allowance of the disability retiree, not withstanding he had been receiving a reduced retirement allowance in the year of his death. The term 'earnings' as used in this subsection shall mean income derived from wages, salaries, tips, commissions, other employee compensation, and self-employment. In all cases of doubt the Board of Trustees shall decide what is and is not 'earnings' for the purposes of administering the provisions of this subsection. An ordinary disability retiree who became a member of this system before July 1, 1979, and any special disability retiree who has not been certified as fit to perform duties in the classification in which he was performing duties at the time of his retirement may, nevertheless, accept suitable employment with the City, subject to the 'earnings' provision contained herein; provided, however, that such an employee shall not again become a member of any retirement system supported in whole or in part by the Mayor and City Council of Baltimore."

"for the further performance of the duties of *his* job classification . . . ." (Emphasis added).

Before words in a statute may be rejected as surplusage, however, it must be certain that the Legislature could not possibly have intended the words to be in the statute, and that the correction of them serves merely as a correction of careless language and actually gives the true intention of the Legislature. *Pressman v. State Tax Commission,* 204 Md. 78, 90 (1954).

In interpreting § 34 (c) (Ordinary Disability), however, the identical phrase was not ignored. To the contrary, it was emphasized. Only by omitting the prepositional phrase in § 34 (e) and inserting the modifying adjective in § 34 (c) could the court have arrived at the Workmen's Compensation-type-scheme it applied. But, as already noted, we may not surmise a legislative intention contrary to the words and letters of a statute, or insert or delete words with a view of making the statute express an intention which is different from its plain meaning. *Fowel v. State,* 206 Md. 101, 105-106 (1955); *Welsh v. Kuntz,* 196 Md. 86, 93 (1950). Nowhere does it appear, by express reference or by implication, that the legislative body intended to provide *any* benefit for a partially disabled person. The criteria in both sections speak in absolutes. The test is whether he can or cannot perform "the duties of his job classification". If he is " 'incapacitated' for the performance" of these duties, he may qualify for *either* ordinary or special benefits, but unless he is so incapacitated, he qualifies for neither. The statute does not refer to an incapacity to perform less than all of the duties of his job classification in either section. There are no "degrees" of incapacity referred to anywhere in the statute. The prefix "in" clearly connotes a negation of the root meaning of the term "capacitated", which we must assume was purposefully used by the lawmakers. One who is incapacitated is without capacity. That which he is without capacity to do is the performance of the duties of his job classification. The legislative body expressed no concern for providing benefits to those whose disability may partially limit the degree of per-

formance of their dangerous jobs. It sought to retire those who *no longer* could perform the rigorous duties.

Although the relative insignificance of an elbow injury hardly comports with the Examiner's, the judge's — or with our — philosophical concept of full retirement benefits when one is obviously able to work productively at another job, this does not justify either court in reaching a result not clearly intended by the enactors of the statute. In fact, similar concerns appear to have been addressed by the legislators in § 34 (g) (2).

Whether we approve of the right to seek other employment subject to that limitation is not a matter of judicial concern. It is the Legislature's responsibility to establish policy. It would be dangerous and unwarrantable for a court to grope for an intent, or to make one from its own ideas of policy and morals, and on that ground say that a particular case is withdrawn from the operation of the plain and unambiguous language of a statute. *Hawbecker v. Hawbecker,* 43 Md. 516, 519 (1876).

But thus far we have primarily addressed an issue which the statute did not; *i.e.,* the comparison between partial and total incapacitation. While the distinction in the legislative scheme was not in the *degree* of capacity, there are two dissimilar criteria for entitlement which were coupled with common requisites of incapacity, evidencing the purpose behind the enactments. The two distinguishing and unrelated elements from which the legislative scheme is gleaned are that

> in § 34 (c), referred to as "ordinary" disability benefits, entitlement depends upon tenure (*i.e.,* at least five years of service); and
>
> in § 34 (e), referred to as "special" disability benefits, entitlement depends upon an injury in the performance of one's duties, without regard to length of service.

Conforming to its underlying tenure-related purpose, the "ordinary" benefits are computed by a formula which provides compensation in direct proportion to an employee's

years of service. If the incapacitated employee of five or more years is fifty years old, he will receive a service retirement allowance; otherwise his first twenty years of service entitles him to one-fortieth of his average final compensation and one-fiftieth for every year thereafter § 34 (d) (2).[4] The "special" benefits for the employee injured on the job, on the other hand, are a fixed two-thirds of his salary without regard to length of service either for entitlement purposes or amount, § 34 (f) (2).[5] Clearly, the two sections have diverse criteria; one section allows tenured employees to retire when they are no longer able to perform their duties, while the other affords retirement benefits to those who suffer injuries in the performance of their hazardous jobs.

Because the statute is clear and unambiguous, we hold that the judge abused his discretion by interpreting the statute contrary to the clear legislative scheme. *Bouse v. Hutzler,* 180 Md. 682, 687 (1942). We will, however, remand this case because, despite the judge's expression to the contrary, the *Examiner* did not make a finding whether the appellant's incapacity was "the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part." Both parties assumed the truth of this fact in their briefs, and in the Statement of Undisputed Facts submitted to us in the joint record extract. We are not factfinders, however, and leave this crucial issue for the Claims Examiner's determination by an expressed

---

**4.** "§ 34 (d) Allowance on ordinary disability retirement. Upon retirement for ordinary disability a member shall receive a service retirement allowance if he has attained the age of fifty; otherwise he shall receive an ordinary disability retirement allowance which shall consist of:

. . .

(2) A pension which, together with his annuity, shall provide a total retirement allowance equal to one-fortieth of his average final compensation for each of the first twenty years of service, and one-fiftieth of his average final compensation for each year after the first twenty years of service; . . ."

**5.** "(f) Allowance on special disability benefits. Upon retirement for special disability a member shall receive a special disability retirement allowance which shall consist of:

. . .

(2) A pension, in addition to the annuity, of sixty-six and two-thirds percent of his average final compensation; and . . ."

holding. That, of course, is essential to entitlement to special disability benefits.

We reverse the judgment of the court and remand the case to it in accord with the agreement of both parties at oral argument. We direct that the court remand to the Claims Examiner who will provide a rehearing of the case in light of the proper construction of the statute. Obviously crucial to that hearing will be the requirements of the appellant's job classification (which were not in this record) as a guide to determine appellant's capacity or incapacity to perform the duties within that classification.

> *Judgment reversed.*
>
> *Case remanded to the Baltimore City Court for its compliance with this opinion.*
>
> *Costs to be paid by the appellees.*