BOARD OF TRUSTEES OF the OKLA-
HOMA CITY POLICE PENSION AND
RETIREMENT SYSTEM, Appellant,

v.

Paul CLARK and the Oklahoma State
Police Pension and Retirement
Board, Appellees.

No. 54802.

Supreme Court of Oklahoma.

Jan. 18, 1983.

Walter M. Powell, Municipal Counselor, Patricia Sellers, Asst. Municipal Counselor, Oklahoma City, for appellant.

Philip F. Horning, Horning, Johnson & Grove, Oklahoma City, for appellees.

OPALA, Justice: ··

■ The issue presented is whether a police officer—permanently partially disabled in line of duty but capable of satisfactorily performing sedentary duties—is entitled to disability allowance under 11 O.S.Supp.1977 §§ 50–101 [1] et seq. We answer in the negative.

■ The applicant for disability allowance, a patrolman with the Oklahoma City Police Department, was injured in the line of duty and, as a direct result, suffered permanent nerve damage to his right foot. Following his accident, the applicant was reassigned to the communications unit where his duties were mainly sedentary. When it became evident that he would be unable to return to field duty, the applicant sought disability allowance by invoking the provisions of 11 O.S.Supp.1977 §§ 50–101 et seq.[2] His application, initially denied by the Oklahoma City Board of Trustees of the Police Pension and Retirement System (municipal board),[3] came for review by the State Police Pension and Retirement Board (state board).[4] The latter reversed the denial although it declined to grant an immediate allowance of benefits because the ap-

plicant was then still engaged as a full-time officer. The municipal board appealed from this decision to the district court. Shortly before the appeal was brought, the applicant resigned from his job in the police department and brought a request for ancillary enforcement relief to secure payment of the pension which was adjudged due him by the state board's decision. The municipal board denied the request for enforcement relief and the state board again reversed the decision. It held that the applicant was entitled to immediate benefits. The record in the pending district court case was thereafter supplemented by inclusion of the ancillary proceeding in aid of enforcement.[5] The two applications were consolidated in one court proceeding. The district court sustained both state board's decisions. The municipal board seeks corrective relief.

I.

The decisions of both the state board and of the district court rest on *Board of Trustees of the Police Pension and Retirement System v. Faris.*[6] We do not find *Faris* applicable to this case.

1. The 1977 version of the act was the statute in force at the time of the officer's injury for which disability allowance was sought.

2. References to section numbers of the pertinent act are to 11 O.S.Supp.1977 §§ 50–101 et seq.

3. The Oklahoma Municipal Code [Code] establishes in §§ 50–103 A and 50–103 B a police compensation retirement system for municipalities and creates a local board of trustees to administer the system. Duties of the municipal board, enumerated in § 50–103 D, include "... the disbursement of the funds of such system ..." and the designation of beneficiaries thereof as provided in the Code or by ordinances of such municipality. Section 50–129 provides for appeals to the state board by any person aggrieved by the municipal board's decision. The appeal "... shall be in writing and be commenced within thirty (30) days after the date of the [municipal] Board's decision ...." § 50–129.

4. The state board is created by the provisions of § 50–201. It is authorized in § 50–202(3) to review a municipal board's decision in order to determine whether it conforms to the law and

the intent of the statute. Section 50–202(3) provides that "* * * [t]he State Board may affirm, disallow, or modify any such pension or retirement upon review ... [and that] any aggrieved party may appeal to the district court ...." An appeal to the district court, under § 50–129 B, "... shall be commenced within thirty (30) days after the date of the State Board's decision ...." Section 50–129 B also provides that "[t]he proceedings, practice, and standards of review in the district court shall be governed by the Administrative Procedures Act [75 O.S.1981 § 301 et seq.] except as otherwise provided [in the Code] ...."

5. Because the second order for enforcement relief was predicated on the effectiveness of the appealable decision on the first application and presented no issues independent of or collateral to the first appeal, the ancillary enforcement proceeding was properly included for judicial re-examination in the same case. *Jones v. Jones,* Okl., 612 P.2d 266, 267 [1980]; *Tisdale v. Wheeler Bros. Grain Co., Inc.,* 599 P.2d 1104, 1107 [1979].

6. Okl., 470 P.2d 981 [1970].

**508**

*Faris* dealt with 11 O.S.1961 § 541 [7] before its amendment in 1969.[8] The pre-1969 statute construed in *Faris* was extremely broad. It extended retirement system's benefits to all employees of a police department—both civilian and commissioned personnel.[9] Although in *Faris* we took notice of the subsequent (1969) amendment which had narrowed the definition of policeman,[10] we expressly declined to venture an opinion as to its effect.[11] *Faris* established pension eligibility criteria based on an applicant's inability to perform the regular field duties of a policeman. Anchored as these were to the § 541(b) definition of policeman, the *Faris* criteria became obsolete with the later statutory amendments. The *Faris* eligibility standards clearly govern only those pension claims that arise under § 541 before its 1969 amendment. It is for this reason that *Faris* is without precedential force upon the point here in question and was erroneously deemed apposite to the proceeding under review.[12] Insofar as *Faris* is perceived to be in conflict with our pronouncement herein, it is no longer to be regarded as a correct exposition of the current law.

**II.**

The purpose of disability allowance under the police pension and retirement system is to provide a source of income to a police

officer who has been disabled and who, by reason of such disability, is no longer able to continue his employment with the department.[13] The applicant's argument is that because he is physically incapable of performing the duties of a patrolman, he can no longer function as a police officer and is hence eligible for disability allowance. His reasoning misapprehends the meaning of the phrase "police officer" as it is used in the 1977 act here to be applied.

Both the 1969 amendment and its 1977 successor excluded all civilian personnel from participation in the pension program and introduced into our statutory law a far broader description of a police officer's functions. In § 50–101(2) the statute characterizes these functions as follows:

"... to preserve public peace, protect life and property, prevent crime, serve warrants, enforce all laws and municipal ordinances of this state, and any political subdivision thereof, and ... bear arms in the execution of such duties ...."

Eligibility for disability allowance depends on the police officer's "fitness for duty".[14] It is to be measured by his ability to perform substantially the duties required in any given permanent assignment within the department. "Fitness for duty" no longer is to be gauged by the ability of an officer to perform *all* the regular [field] duties of a

---

**7.** Laws 1969, c. 185 § 1.

**8.** 11 O.S.1961 § 541 (subsequently recodified as § 50–101 et seq.), infra note 9.

**9.** The all-inclusive definition of a "policeman" found in 11 O.S.1961 § 541(b) is: "... any officer *or employee* of the regular police department of cities or towns employed for police duties, or necessary duties in the operation of the police department, and shall include turnkeys, matrons, radio operators, PBX operators, employees in bureaus of records, department clerks, probationary patrolmen, patrolmen, sergeants, lieutenants, drill masters, captains, senior officers, detectives, secretary to the chief of police, and other police officers of said department performing police duties whose salaries are paid for with public funds as set up in the budget of said city or town for the regular police department ...." [Emphasis added].

**10.** *All* non-commissioned personnel were excluded from the definition of "policeman" by the 1969 amendment to § 541(b).

**11.** *Faris,* supra note 6 at 985.

**12.** *Faris,* supra note 6, can go no farther than give us an authoritative construction of the pertinent § 541(b) language before its amendment in 1969.

**13.** *Miller v. Board of Trustees, Police Pension Fund, City of New Orleans,* 286 So.2d 788, 791 [La.App.1974].

**14.** Under the provisions of § 50–118, a police officer pensioned for disability may be summoned to submit himself to the municipal board for an examination of his "fitness for duty". If found able to return to duty, the officer is no longer entitled to the pension.

policeman.[15] *An officer's inability to do field duty is not ipso facto determinative of his eligibility for disability pension.*[16]

Our view of "fitness for duty"—a phrase neither defined in the statute nor construed by extant case law—is consistent with the managerial design for a large metropolitan police force in which necessity dictates a high degree of departmental specialization. Job placement in this setting occurs within a wide range of available tasks which require a varying degree of skill and physical activity.[17] The notion that an officer must be capable of performing substantially the full range of field duties is no longer viable. Public policy favors maximum utilization of physically handicapped employees.[18] When the presence of physical or mental disability prevents an officer's assignment to field duty but does not inhibit his performance in other areas of police work,[19] there can be no unfitness for duty within the meaning of the pension law. But if an officer's partial disability does in fact preclude him from serving *within the department,* disability allowance is indeed proper.[20]

At the time of his initial request for pension, the applicant herein was serving in the communications unit. His service record was exemplary and his supervisors did not question his capacity to perform the required duties. The applicant himself acknowledged that his supervisors, without exception, had told him he was doing a good job. Although he did re-injure his leg on three different occasions while serving as a communications officer, the applicant stated that he could carry out his present job and knew of no reason why he could not continue to perform in that placement. His sick leave record was considered to be better than that of nondisabled persons serving in the same assignment.

In the ancillary proceeding that followed (after the state board ruled that an actively employed officer could not be paid a pension[21]), it was stipulated that the applicant's condition had not changed since the initial hearing and that he claimed no further disability.

The record is uncontroverted that the applicant was ably performing duties assigned to him when he initiated his quest for a pension. The municipal board's decision is amply supported by evidence that meets all the § 322 standards for sustension upon judicial review.[22] That board correctly

---

**15.** In *Barber v. Retirement Bd. of City & Co. of San Francisco,* 18 Cal.App.3d 273, 95 Cal.Rptr. 657, 659 [1971]—a case involving compulsory retirement of a fireman who was unable to serve in a fire fighting unit—the court held that where light duty assignments are available, the term "duty" should be construed to mean "duties [other than fire fighting] required to be performed in a given permanent assignment *within the department*". [Emphasis added].

**16.** § 50–115. The 1977 statute did not differentiate between total and partial disability. Section 50–115 was amended in 1980 to include both categories. Laws 1980, ch. 356, § 20.

**17.** The court in *People ex rel. Metcalf v. McAdoo,* 184 N.Y. 268, 77 N.E. 17, 18 [1906] defined "fitness for police duty" as meaning "the ability to discharge, with average efficiency, the duty of the grade to which the member belongs."

**18.** From a management standpoint, the utilization of skilled manpower on any assigned task in the department is more desirable than the use of inexperienced personnel.

**19.** Current public policy trends are generally against sacrificing the contributions of a highly trained officer because of a partial disability that is insufficient severely to hamper his service in another division of the department. *Harmon v. Bd. of Retirement of San Mateo County,* 62 Cal.App.3d 689, 133 Cal.Rptr. 154, 157 [1976]; *Tillman v. Sibbles,* 341 So.2d 686, 689 [Ala.1977]; *Ring & O'Mara v. Langdon,* 69 A.D.2d 998, 416 N.Y.S.2d 137, 138 [1979]; *Barber,* supra note 15.

**20.** See *Brooks v. Pension Bd. of City of Alameda,* 30 Cal.App.2d 118, 85 P.2d 956, 957 [1938]; *City of Opa-Locka v. Woodard,* 252 So.2d 852, 853 [Fla.App.1971]; *Spencer v. Yearace,* 155 W.Va. 54, 180 S.E.2d 868, 872 [W.Va.App. 1971].

**21.** Section 50–115 makes no provision for disability payments to a partially disabled employee who is still employed by the department.

**22.** The district court standards for review of a police pension case are governed by the Administrative Procedures Act [APA], supra note 1; 11 O.S.Supp.1977 § 50–129 B. The APA, in 75

found the applicant's physical impairment did not entitle him to a disability allowance. The district court should have hence reinstated the municipal board's decision and let it stand undisturbed by the contrary action of the state board.

The order of the district court is reversed with directions to reinstate the two municipal board rulings by which the issues there tendered were resolved adversely to the applicant.

BARNES, C.J., SIMMS, V.C.J., and IRWIN, LAVENDER, HARGRAVE and WILSON, JJ., concur.

HODGES, J., dissents.

O.S.1981 § 322(1)(e), provides that in a proceeding for review of an agency order, the supreme court or district court "... may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are: * * * (e) clearly erroneous in view of the *reliable, material, probative and substantial competent evidence, ....*" [Emphasis added].