[L.A. No. 31591. June 30, 1983.]

DONALD H. WINSLOW, Plaintiff and Appellant, v.
CITY OF PASADENA, Defendant and Respondent.

**COUNSEL**

Stillman, Furay, Green & Shinee and John B. Furay for Plaintiff and Appellant.

Evelynn M. Finn, City Attorney, Terrance M. Anderson, Deputy City Attorney, Kegel, Tobin & Hamrick, Charles H. Carpenter and John F. Daum for Defendant and Respondent.

**OPINION**

**RICHARDSON, J.**—May a city revoke an employee's disability retirement on the ground that he is physically able to perform the duties of a currently available position? We will sustain the city's action because it involved no policy change, and also because the city retirement board's reinstatement action was consistent with the city charter.

Donald H. Winslow was employed by the City of Pasadena (City) Police Department as a police officer in 1958. In 1975, after he had developed an obstructive and restrictive lung disease connected with his employment as a motorcycle officer, Winslow was granted a service-connected disability retirement continuing "until further order of the Retirement Board."

In 1979, a number of light duty positions were created in the police department including that of "desk officer." The Retirement Board, Pasadena Fire and Police Retirement System (board or retirement board) determined that Winslow should be reexamined to determine his eligibility for this type of service, and Dr. Bruce Gillis performed an examination on June 15, 1979. Dr. Gillis concluded that Winslow was not totally disabled and that he could be safely employed in an environment which was free of potential irritants, including cigarette smoke. He also specified that until Winslow's hypertension was controlled, he should avoid stressful employment situations. In a subsequent medical report, Dr. Gillis specifically concluded that Winslow could perform the duties of a desk officer in the police department.

The duties of a desk officer include training, answering emergency calls for service, operating the information desk, receiving crime reports from victims at the emergency desk or by telephone, dispatching police calls, and handling field officers' requests for telephone contacts with witnesses and informants. In a subsequent administrative hearing, plaintiff testified that before his retirement he had performed all of these tasks. The foregoing duties are performed in an area served by an efficient air conditioning system. Only one of three police positions in the "desk officer" unit requires any direct public contact, and that duty station is separated from the public by a glass barrier. Another duty station in the unit operates from a separate enclosure which can be sealed off from the rest of the work area.

The retirement board conducted a hearing in March 1980, at which Winslow described his varied employment duties in 1978 and 1979. While employed by Motion Picture Permits of Los Angeles, he (1) acted as a technical adviser for motion picture firms regarding police practices, (2) while armed, supervised security officers on movie locations, and (3) occasionally acted in motion picture productions. He worked in outdoor locations in various parts of Los Angeles, and rode his motorcycle to and from work most of the time. His annual earnings for 1978 and 1979 were approximately $24,000.

The parties presented to the board conflicting medical reports, Dr. Gillis concluding that plaintiff could act as a desk officer, and Dr. Kim, Winslow's physician, opining that he could not. Other medical reports which were used at the original disability hearing were also submitted. In recommending his reinstatement, the board found that Winslow was not totally disabled, and that his physical condition "has ceased to disable him from service as a police officer with the assignment as desk officer . . . ."

Winslow then filed a petition for writ of mandate in the Los Angeles County Superior Court. (Code Civ. Proc., § 1094.5.) Exercising its independent judgment (*Strumsky* v. *San Diego County Employees Retirement*

*Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]; *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76, 79 [117 Cal.Rptr. 534]), the court found that the weight of the evidence supported the board's action, adopted its findings of fact in their entirety, and concluded that the board's action did not constitute a change in policy impairing Winslow's vested pension rights. ■ Winslow appeals, arguing that the board's findings conflict with the holding in *Newman* v. *City of Oakland Retirement Bd.* (1978) 80 Cal.App.3d 450 [145 Cal.Rptr. 628], because the position of desk officer to which he was to be assigned was created after his retirement. Under these circumstances, he contends that his assignment constituted a change in policy which unconstitutionally impaired his vested pension rights. (See *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 748-749 [129 Cal.Rptr. 289, 548 P.2d 689]; *Strumsky, supra,* 11 Cal.3d at p. 45; *Newman, supra,* 80 Cal.App.3d at pp. 458-459.)

In *Newman,* a police officer who had suffered a gunshot wound to his right wrist was mandatorily retired in 1974. Two years later, the city's retirement board voted to reinstate him. On appeal, the *Newman* court noted that from the time of his employment until his retirement, the city applied a "full-range-of-duties" standard, meaning that an officer could not be re-called to active duty unless his recovery from disabling injury permitted his performance of *all* of the duties of a regular police officer. Thereafter, the *Newman* board adopted a new test which authorized the recall of an officer to an available position when he could perform a "reasonable range" of police duties. (80 Cal.App.3d at p. 453.) The *Newman* court found that use of this test was an adoption of a new standard constituting change in policy. The board's retroactive application of this policy, it was held, violated New-man's fully matured and vested contractual right to pensionable status. (*Id.,* at pp. 462-463.)

Plaintiff attempts to equate the creation of the new positions here with the change of policy identified in *Newman.* However, there is a significant dis-tinction. Here, the creation of a new position entails the performance of functions which were previously performed by other employees. *Newman* involved a change in policy because it entailed a substantial alteration of the basic conditions under which an employee could be recalled. When Winslow retired, however, there was neither guarantee nor reasonable ex-pectation that the department would not alter its internal structure periodi-cally, by creating, eliminating, or restructuring necessary positions or rear-ranging existing assignments. Nor was there a requirement that an active officer be able to serve in every possible assignment. Indeed, the record disclosed that City's policy "in the past" had been to provide light duty assignments to injured employees.

Winslow's employment contract with the City was governed by City's charter. (Cal. Const., art. XI, § 5, subd. (b).) We have held that a charter city possesses full power to regulate its municipal affairs. (*Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 346 [71 Cal.Rptr. 135, 444 P.2d 711]; *Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 169 [143 Cal.Rptr. 633].) Section 1509.34 of the charter provides that when employees have been retired for disability, and the disability "shall cease to the extent necessary to enable him to perform the duties of the rank or position he held at the time of retirement, the member's allowance shall cease at the option of the Retirement Board, and the member shall be reinstated at the rank and in a position of the same grade as the member occupied at the time of retirement . . . ." Consistent with that provision, the board's original order retiring Winslow provided that his retirement was to continue "until further order" of the board, thus giving him notice of the effect of charter section 1509.34.

In *Craver* v. *City of Los Angeles, supra,* 42 Cal.App.3d 76, the Court of Appeal interpreted a city charter provision which required that in the event of a disability an employee must be retired "from further service in such department," in the light of the employee's contention that the basis for his retirement rested on his inability to serve in *any* position rather than in a *particular* one. The *Craver* court held that a person "should not be retired if he can perform duties in a given permanent assignment with the department. He need not be able to perform any and all duties performed by firemen or, in the instant case, policemen." (P. 80.) The court relied on the "well recognized public policy favoring the employment and utilization of physically handicapped persons." (*Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273, 278 [95 Cal.Rptr. 657].) The *Craver* court concluded that if a person is not disabled to a degree which prevents him from serving in any position, "he should not be retired with payment of a disability retirement pension." (42 Cal.App.3d at p. 80.)

As in *Craver* and *Barber,* and in contrast to *Newman,* the relevant charter provision before us permits reinstatement when the employee can "perform the duties of the rank or position he held at the time of retirement," providing additionally that a reinstated member shall return "at the rank and in a position of the same grade as the member occupied at the time of retirement." Thus, no charter requirement conditioned Winslow's reinstatement upon his capacity to serve either as a motorcycle officer or in every other police position. Rather, the charter permits his reinstatement to *any* equivalent position which his health permits. Here, the record shows that the positions created were intended to be filled by a "regular police officer,"

which was the position held by petitioner upon his retirement. His ordered reinstatement would be to the same rank and "in a position of the same grade" as that which he formerly held.

It is clear from the foregoing that substantial evidence supports the trial court's finding that (1) the retirement board retained authority to monitor and reinstate those employees who had been retired on disability, (2) no "change in policy" occurred, (3) the board properly concluded that Winslow was able to perform the duties of a desk officer, and (4) his reinstatement to that position was appropriate. (See *Franz* v. *Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732, 642 P.2d 792] [on appeal, the issue is whether the trial court's findings are supported by substantial evidence].)

As noted, City's charter specifically provides that reinstatement may occur "If the disability for which a member has been retired shall cease to the extent necessary to enable him to perform the duties of the rank or position he held at the time of retirement . . . ." (§ 1509.34.) Plaintiff argues that, at best, Dr. Gillis' report merely concluded that he could perform the duties of a desk officer, but did not suggest that he could perform the full range of duties of a police officer. Thus, plaintiff contends, there was no change in the original disability which would justify his reinstatement in a new position. However, ample evidence supported the board's conclusion that plaintiff was not totally disabled, preventing service in an available and appropriate position. The board could consider Dr. Gillis' report and Winslow's own testimony regarding his capacity to work during 1978 and 1979. From this record, it could reasonably be concluded that plaintiff's disability was no longer total.

In short, the board reinstated Winslow in a position, the duties of which it reasonably found he was capable of performing. The position was of the same classification and rank as that which he held at the time of his retirement. This constituted no change in policy of the nature involved in *Newman.* Moreover, the board ordered that his retirement system account be credited without cost to him, as service credit, for the period during which he was on retirement. Thus, he was not penalized for the period (1975-1980) during which he was on disability retirement.

We conclude that the board's action was proper and affirm the trial court judgment denying Winslow's petition for writ of mandate.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.