[Civ. No. 68334. Second Dist., Div. Four. Nov. 15, 1983.]

LARRY D. WINN, Plaintiff and Appellant, v.
BOARD OF PENSION COMMISSIONERS OF THE CITY OF LOS
ANGELES, Defendant and Respondent.

534

COUNSEL

Fogelman & Shaffer, Shaffer & Associates and Larry Joel Shaffer for Plaintiff and Appellant.

Ira Reiner, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, Mary Jo Curwen and Beverly E. Mosley, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

LUCAS, J.*—Appellant, Larry D. Winn, appeals from a judgment denying his petition for a writ of mandate. We affirm.

### FACTS

Appellant is a former member of the Los Angeles Police Department. He commenced his employment as a police officer with the city on October 6, 1968.

Appellant worked car patrol duties through the latter part of 1977. In August of 1975, and April of 1976, he received orthopedic injuries while on duty. As a result of the injuries, he was off work periodically. Toward the end of 1977, he was placed on a light duty desk assignment.

About May of 1976, appellant began to have personality conflicts with other members of the police department and developed emotional problems.

Beginning in February 1977, appellant filed for workers' compensation claiming injury to his back and pysche.

On November 20, 1978, appellant applied for a disability pension pursuant to section 190.12 of the Charter of the City of Los Angeles. After several hearings, respondent Board of Pension Commissioners of the City of Los Angeles, on January 10, 1980, denied appellant a disability pension.

On June 4, 1980, appellant filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 challenging respondent's decision.

On May 20, 1982, the superior court denied the petition and this appeal followed.

At the superior court hearing, the court received over 800 pages of administrative record. Appellant also offered records of actions taken by and evidence submitted to the Workers' Compensation Appeals Board after the date of the denial by the Board of Pension Commissioners. The trial court admitted this evidence. Part of Exhibit 68A is a two-page document dated May 18, 1981, consisting of a Workers' Compensation Appeals Board form entitled "Stipulations with Request for Award" with various blanks filled

---

*Assigned by the Chairperson of the Judicial Council.

in. The first line of the stipulations form reads "FOR WORKERS' COMPENSATION PURPOSES ONLY." The next paragraph reads, in relevant part:

"The parties hereto stipulate to the issuance of an Award and/or Order, based upon the following facts. . . : 1. Larry Dean Winn . . . sustained injury arising out of and in the course of employment <u>back and psyche</u> .
(parts of body injured)
3. The injury caused permanent disability of <u>48-1/4%</u>, . . ."

Exhibit 68A also included findings of fact and an award for permanent disability dated August 17, 1981, made by a workers' compensation judge pursuant to the above stipulation.

ISSUES

1. Whether the Workers' Compensation Appeals Board "Stipulations with Request for Award," dated May 10, 1981, and the "Findings of Fact and Award," dated August 17, 1981, are res judicata and collaterally estop respondent to deny appellant's application for a disability pension?

2. Whether the decision of the superior court was supported by substantial evidence?

DISCUSSION

I

■ Appellant contends that the "Stipulations with Request for Award" and the "Findings of Fact and Award" pursuant thereto, which were made after the denial of appellant's pension claim by respondent, should be res judicata and collaterally estop respondent from denying appellant a pension. Appellant argues that the trial court under Code of Civil Procedure section 1094.5, subdivision (e), admitted the "Stipulations" and "Findings" as relevant evidence which, in the exercise of reasonable diligence, could not have been produced at the hearing before respondent. Having admitted the evidence, the trial court was bound to give it conclusive effect under the doctrine of res judicata and collateral estoppel. Thus, the argument continues, under the independent judgment test applied by the trial court, the court was bound to find that the appellant was orthopedically and psychologically permanently disabled, and therefore entitled to a pension.

■ "The doctrine of res judicata gives certain *conclusive effect* to a former judgment in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration." (4 Witkin,

Cal. Procedure (2d ed. 1971) Judgment, § 147, p. 3292, and cases cited. Italics omitted.) ▉ Where the subsequent action is on the same cause of action, a prior judgment is a complete bar. ▉ But where the subsequent action is on a different cause of action, the former judgment is not a complete merger or bar, but is effective as a collateral estoppel, i.e., it is conclusive on issues actually litigated between the parties in the former action. (*Id.*, at p. 3293.)

Appellant urges that *Dakins* v. *Board of Pension Commissioners* (1982) 134 Cal.App.3d 374 [184 Cal.Rptr. 576] is controlling on the issue of res judicata and collateral estoppel. In *Dakins,* a policeman had applied for a service-connected disability pension. The Board of Pension Commissioners found that the disability was not service connected. Prior to the pension board's finding, the policeman had filed a workers' compensation claim for the same disability. The Workers' Compensation Appeals Board found, prior to the Pension Board's finding, that the disability was service connected. On appeal, the appellate court held that the pension board was collaterally estopped to deny that the disability was service related. The court found that although the workers' compensation claim and the pension claim were not the same cause of action, the identical issue of whether or not the disability was service connected was litigated before the pension board and the Workers' Compensation Appeals Board. The court also found that the workers' compensation finding was part of a final judgment, and that the parties (in both cases an entity or agent of the City of Los Angeles) were identical. (*Id.*, at p. 387.)

We find the *Dakins* case distinguishable in that in the instant case the issues considered by the Workers' Compensation Appeals Board and the Board of Pension Commissioners were not identical, and the workers' compensation award was a subsequent, and not a prior judgment.

Section 190.12 of the Charter of the City of Los Angeles (the "Charter") provides as follows:

"(a) Service-Connected Disability. Upon the filing of his written application for a disability pension or upon the filing of a written request therefor by or on behalf of the head of the department in which he is a Department Member, any System Member whom the Board shall determine has become physically or mentally incapacitated by reason of injuries received or sickness caused by the discharge of the duties of such person as a Department Member, and who is incapable as a result thereof from performing his duties, shall be retired by order of the Board from further active duty as a Department Member.

"(b) Nonservice-Connected Disability. Upon the filing of his written application for a disability pension by a System Member who shall have 5 years of service or more since the date of his last regular and permanent appointment as a Department Member including his service of the required probationary period, or upon the filing of a written request therefor with respect to such a System Member by or on behalf of the head of the department in which he is a Department Member, any System Member whom the Board shall determine has become physically or mentally incapacitated by reason of injuries or sickness other than injuries received or sickness caused by the discharge of the duties of such person as a Department Member, and who is incapable as a result thereof from performing his duties, and if the Board further shall determine that such disability was not due to or caused by the moral turpitude of such System Member, shall be retired by order of the Board from further active duty as a Department Member.

"(c) Determination of Disability. Upon the filing of any written application or request for a disability pension, as referred to in subsections (a) and (b) of this section, the Board: (1) shall cause the System Member to be examined by and a written report thereon rendered by at least three regularly licensed and practicing physicians selected by it; (2) shall hold a hearing with respect to such application or request; and (3) shall receive or hear such other evidence relating to or concerning the System Member's disability or claimed disability as may be presented to it. The Board shall have the power to hear and determine all matters pertaining to the granting and denying of any such application or request for a disability pension. The Board first shall determine whether or not the System Member is incapable of or from performing his duties as a Department Member. If the Board were to determine that he is not so incapable, it then shall be the duty of the Board to deny the application or request. If the Board were to determine that he is so incapable, it then shall determine, pursuant to the language used in subsections (a) and (b) of this section, whether his incapacity or disability is service-connected or nonservice-connected."

The Workers' Compensation Appeals Board records dated September 27, 1979, show that appellant was found to have "sustained injury to his back and psyche arising out of and in the course of his employment." There was no finding that such injury was permanent. In the stipulations with request for award, dated May 18, 1981, and the accompanying findings and award there is an adjudication that appellant was given a 48 1/4 percent permanent disability rating.

Under workers' compensation law, "Total disability refers to total incapacity to work; temporary partial disability indicates a condition which permits the employee to perform some occupational functions." (1 Herlick,

Cal. Workers' Compensation Law Handbook (2d ed. 1978) p. 164.) "Ratings based upon specific impairments are deemed to be that degree of problem for the employee in adjusting to the labor market. Also as in the case of permanent total disability or ratings above 70%, there is a life pension feature. Total disability rates 100%." (*Id.*, at p. 205.) ■ Permanent disability in workers' compensation is disability that causes impairment of earning capacity, impairment of the normal use of a member or a competitive handicap in the open labor market. (*State Compensation Ins. Fund* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 45 [27 Cal.Rptr. 702, 377 P.2d 902]; *National Auto & Cas. Ins. Co.* v. *Industrial Acc. Com.* (1963) 216 Cal.App.2d 204 [30 Cal.Rptr. 685].)

■ Comparing the criteria set forth in the Charter section 190.12 with the stipulations with request for award, the findings and the award in the workers' compensation cases, it is clear that, other than the question of whether or not the injury or disability was service connected, the issues are not identical, and in fact are not really closely related.

The pension board must make a two-step analysis in determining whether an applicant is eligible for a pension (whether service-connected or nonservice-connected). The board must determine whether the applicant has become physically or mentally incapacitated by reason of injuries received or sickness. If the board makes an affirmative finding of incapacity, it must then determine whether or not the applicant is incapable of performing his duties. That is, the applicant must be under such a disability as to be incapacitated, and, further, such incapacity must prevent the applicant from performing his duties. (Charter, § 190.12, subds. (a) and (b).)

Charter section 190.12, subdivision (c), provides for the procedure to be followed in acting on an application for a disability pension. The board must have the member examined by physicians, hold a hearing, and receive evidence concerning the disability. Following the hearing, the board first must determine whether or not the member is incapable of performing his duties as a department member. If the board determines that he is not so incapable, it is the duty of the board to deny the application.

In the instant case, the pension board found that appellant was able to perform the duties to which he may be assigned and denied a pension.

The determinations of the pension board were not the same as those made by the Workers' Compensation Appeals Board. The pension board determined appellant was not incapable of performing the duties to which he may be assigned. The Workers' Compensation Appeals Board (using the stipulations with request for award) found that appellant had suffered injury to

his back and psyche and awarded 48 1/4 percent permanent disability. These findings and award would not preclude a finding by the pension board that appellant was capable of performing the duties to which he may be assigned. In *Winslow* v. *City of Pasadena* (1983) 34 Cal.3d 66 [192 Cal.Rptr. 629, 665 P.2d 1], 70-71, quoting from *Craver* v. *City of Los Angeles* (1974) 42 Cal.App.3d 76 [117 Cal.Rptr. 534], the Supreme Court stated:

"The *Craver* court held that a person 'should not be retired if he can perform duties in a given permanent assignment with the department. He need not be able to perform any and all duties performed by firemen or, in the instant case, policemen.' (p. 80.) The court relied on the 'well recognized public policy favoring the employment and utilization of physically handicapped persons.' (*Barber* v. *Retirement Board* (1971) 18 Cal.App.3d 273, 278 [95 Cal.Rptr. 657].) The *Craver* court concluded that if a person is not disabled to a degree which prevents him from serving in any position, 'he should not be retired with payment of a disability pension.' "

In the instant case, there was conflicting evidence before the pension board as to whether or not appellant suffered from a psychological disability. There was also evidence that appellant could perform a desk job where he had the ability to get up and move around at intervals.

We conclude from the above discussion that the issues presented to the Workers' Compensation Appeals Board and the Board of Pension Commissioners were not identical for the purposes of res judicata and collateral estoppel.

An additional reason why the "Stipulations with Request for Award" and the findings and award based thereon should not be binding on the Board of Pension Commissioners appears on the face of the stipulations. In bold print, underlined, on the first line it is stated that the stipulations are for workers' compensation purposes only. ■ Where stipulations are entered into for specific restricted purposes by both parties, the stipulations should be used for those agreed purposes. ■ Here the stipulations were entered into long after the pension board had denied appellant's pension application. To allow those later stipulations, entered into for workers' compensation purposes only, to bind the pension board would be unfair and outside of the intent expressed by the parties on the face of the document.

Finally, we note that the elements of res judicata and collateral estoppel require a *prior* judgment. The final decision of the pension board was issued on March 18, 1980. The "Stipulations with Request for Award" and the findings of fact and award thereon were made on August 17, 1981, almost a year and a half later. Here the workers' compensation ruling was not a

prior judgment, but a judgment subsequent to that of the pension board. Although the trial court received the stipulations and award in evidence, it was not bound to give them res judicata or collateral estoppel effect.

II

Appellant contends that there is not substantial evidence in the record to support the findings that:

1. Appellant could perform a light duty assignment;

2. Appellant was not totally psychologically disabled.

In a review of a petition for writ of administrative mandamus where the trial court has applied the independent judgment test, it is the role of the appellate court to determine only whether substantial evidence supports the trial court's ruling. (*Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208, 217 [178 Cal.Rptr. 636].)

The trial court found that appellant's orthopedic injury would allow him to perform a light duty assignment and that appellant's emotional problems did not equate to a psychological disability. Appellant's counsel raised the question of whether permanent light duty assignments existed to which appellant could be assigned, and stated, "They attempted to assign him to an assignment, but there is no evidence in this record that there was light duty assignment." From the colloquy between the court and appellant's counsel, concerning light duty assignments, appellant's position was that in view of his orthopedic problems he could perform U-car work (riding in a black and white car as a single officer and writing up crime reports). U-car work would allow appellant to move around and avoid prolonged sitting, but the desk job to which he had been assigned could not be performed by him since his superiors would not permit him "to get up and walk around like he should have." The court's response was "The question I have to determine is whether he was so disabled as not to be able to perform a light duty job within the police department. I do not think he was so disabled. I think he was able to perform light duty work. And I would order that he be offered light duty work, except for the fact that he has resigned. It seems to me that that would make it impossible for me to order that."

At the board hearing, there was testimony that appellant could not be assigned to U-car duty because he was of too high a rank.

The desk job to which appellant was assigned could have been performed by him from an orthopedic standpoint except for the problem of not being

allowed to move around. Appellant's counsel appears to concede this in arguing the matter to the trial court, when he stated, "The reason that he went off the duty assignment, the light duty desk job, was not because someone did in fact order him (not to move around)." That was a complicating problem. He went off on doctor's orders, because the doctor said, "Psychologically you cannot do this."

█ We hold that there is substantial evidence in the record that the light duty desk assignment was available to appellant. Any restrictions on appellant's ability to move around and thereby avoid back complications could have been ordered removed by the trial court in remanding the matter to the board. But, as noted above, the appellant's resignation prevented that.

Finally, appellant contends that the medical evidence overwhelmingly supports a finding of total psychological disability, and that there was no substantial evidence upon which the pension board or trial court could base findings that appellant was not totally psychologically disabled.

Appellant was examined by four psychiatrists, Doctors Farr, Gould, Iacopi, and Furmanski. Doctors Farr, Gould and Iacopi's reports concluded that appellant was psychiatrically disabled. These reports were generally in agreement with Dr. Farr's conclusion that "the reason for this patient's psychiatric disability is because of his obsessive, angry, hostile, homicidal, and occasionally suicidal thoughts. These interfere with his judgment and render him incapable of performing any type of regular job activity for fear of endangering himself, his fellow officers, or his superiors."

Dr. Iacopi's report stated: "He acknowledged seeing his work performance at the Division deteriorate as he tried to model his own behavior there after what he saw was the obstructionistic and unfair behavior of the supervisors. He kept his medical appointments to times when he would be on duty rather than use up other time. He was aware he no longer cared for his job or for the prestige of the Department, and acknowledged that he had been trying to be stubborn and inefficient at work, but had not endangered anyone in the field. He repeated many times that although the job of a police officer had been gratifying to him for years, the injury and the subsequent rating report drew an end to his career no matter what he could do now, and that there was no place within the Department where he could escape that report. He saw no future for himself and felt intense anger. . . . He expressed hopelessness that he could ever again be well regarded by the Department subsequent to the rating report, and could not escape negative bias within the Department."

Dr. Furmanski's report stated:

"A. *Review*: Mr. Winn functioned effectively in the PD from 1968 to 1975 when he began to challenge PD directives and policies, particularly when he went on the sick list for muscle strains. Following a reduction in his usual ratings he contested the ratings but was not sustained. He continued to be angry and negative in his motivation and behavior in the PD. He has sought psychiatric help since August 1978. . . .

"B. *Present Impairment*: Mr. Winn has emotions of injured pride, disappointment, anger and resentment and fears of his emotions which are normal for his personality in his situation. He has no psychiatric impairment and no psychiatric disability. He may perform the full range of police duties."

█ Both the board and the trial court reviewed the doctors' reports, the opinions given, and the reasons for the opinions. Each report was an item of substantial evidence. Both the board and the trial court were entitled to give those opinions the weight to which they felt them to be entitled. (*Kastner* v. *Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52 [45 Cal.Rptr. 129, 403 P.2d 385].) Both relied on the report of Dr. Furmanski which concluded that appellant had no psychiatric impairment and no psychiatric disability. We conclude that their finding is supported by substantial evidence.

The judgment is affirmed.

Kingsley, Acting P. J., and Amerian, J., concurred.