477 A.2d 1174

**MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

v.

**William M. HACKELY et al.**

**MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

v.

**William T. WEDEMEYER.**

**Nos. 33, 49, Sept. Term, 1983.**

Court of Appeals of Maryland.

July 13, 1984.

$25,000 as the net value of the marital property subject to equitable distribution.

278

L. William Gawlik, Asst. City Sol., Baltimore (Benjamin L. Brown, City Sol. and Sheldon H. Press, Chief Sol., Baltimore, on the brief), for appellants.

Sidney Schlachman and Michael Marshall, Baltimore (Steinberg, Schlachman, Potler, Belsky & Weiner, P.A., Baltimore, on the brief), for appellees.

Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

We are faced in this case with the question of whether Baltimore City policemen, found by claims examiners "to be mentally or physically incapacitated for the further performance of the duties of [their] job classification in the employ of Baltimore City," are "totally and permanently incapacitated for the further performance of the duties of [their] job classification in the employ of Baltimore City" when they are capable of performing some, but not all, of the duties of their job.

We have two cases here. No. 33 is a consolidation of five administrative trials and appeals. It reached the Court of Special Appeals. No. 49 involved only the case of William T. Wedemeyer. We granted certiorari in that case prior to consideration by the Court of Special Appeals.

Each of the six appellees was employed as a policeman in Baltimore City. It is conceded that each sustained injuries in the course of his employment and that these injuries were not caused by willful negligence on his part. Each of the appellees is able to perform some, but not all, of the duties of a policeman.[1] For example, claimant William

---

1. The Civil Service Commission job description introduced in the court below, to demonstrate the nature and extent of the job classification of a police officer, states in pertinent part:

"GENERAL DEFINITION

"This is law enforcement work at the full performance level. Work involves maintaining order and protecting life and property in

Hackley has performed clerical work since April 1980, when various employment-related knee injuries prevented him from continuing his duties as a patrolman. Claimant James Possidente has been on limited duty status since March 1977. At the time of his hearing before the claims examiner, he was working in the communications section. As a result of his injuries, claimant Milton Wancowicz was placed on light duty, primarily as a desk clerk, in September 1975. Claimant Edward McCarthy has worked in the crime laboratory as an armorer since 1958, after receiving an injury in the line of duty. Claimant William Sprole was injured in August 1964 and has never returned to full police duties. He currently is employed in the area of building security. Since January 1981, claimant William Wedemeyer has been placed on permanent light duty status and has worked as a courier in an interdistrict mail system. There was evidence that their superiors ordered claimants Possidente and Wancowicz to file for disability pensions.

The controversy in this case surrounds the proper interpretation of Baltimore City Code (1976 Ed., 1979 Supp.) Art. 22, §§ 34(c) and 34(e), which state in pertinent part:

keeping with the responsibilities, policies and procedures of the Baltimore City Police Department.

\* \* \* \* \* \*

"Work requires strenuous physical activity, working in dangerous situations and in all weather conditions. Shift work on a rotating basis is normally required.

"TYPICAL EXAMPLES OF WORK (*illustrative only*)

"Patrols an assigned post to prevent and discover the commission of crime and to enforce traffic regulations; responds to calls and complaints; takes necessary action at the scene of a crime or disturbance including maintaining order, gathering evidence, protecting crime scenes; locates witnesses, and makes arrests; conducts investigations; obtains information through personal interviews; maintains service equipment; testifies in court; maintains good personal appearance; delivers summonses and subpoenas; completes a variety of narrative and fill-in forms; attends roll call and scheduled in-service training sessions; may act as sergeant in latter's absence; performs related work as required."

"Section 34(c)

Ordinary disability retirement benefit. Any member who has acquired five (5) or more years of service and who has been determined by a claims examiner to be mentally or physically incapacitated for the further performance of the duties of the member's job classification in the employ of Baltimore City, and that such incapacity is likely to be permanent, shall be retired by the Board of Trustees on an ordinary disability retirement, not less than thirty (30) and not more than ninety (90) days next following the date of filing his application for ordinary disability retirement benefits."

"Section 34(e)

Special disability benefits. Any member who has been determined by the claims examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement."

Each of these police officers filed an application for special disability benefits pursuant to § 34(e).[2] In each case the claims examiner determined that the applicant was incapacitated for the further performance of duties in his job classification. Nevertheless, each claims examiner concluded that each officer had failed to prove by a preponderance of the evidence that he was totally and permanently incapacitated for the performance of the duties of his job classification because he was able to perform, and had been performing, the sedentary duties required of police officers. In other words, the claims examiners determined that because each police officer was partially but not totally incapacitated, each claimant qualified for ordinary rather than special disability benefits. In each instance the officers appealed to what is now the Circuit Court for Baltimore City. In each case the court reversed the decision of the claims examiner.

As we have indicated, No. 33 reached the Court of Special Appeals. That court said, in an unreported opinion, that it

---

**2.** The fact that the special disability benefits under § 34(e) are more generous than the ordinary disability benefits under § 34(c) has generated this controversy. The difference apparently stems from the eligibility requirement under § 34(e) that the disability be job related.

thought its opinion in *Taylor v. City of Baltimore,* 51 Md.App. 435, 445–50, 443 A.2d 657, 662–65 (1982), "to be dispositive of this appeal." In *Taylor,* Judge Lowe noted, relative to §§ 34(c) and 34(e), that the court "fail[ed] to see where either section of the statute *requires* that the claimant be incapacitated from performing *any* work, other than that which is within his job classification." 51 Md.App. at 445, 443 A.2d at 662 (emphasis in original). The court determined that incapacity is an absolute term and that its meaning is the same within the context of either § 34(c) or § 34(e):

> "Nowhere does it appear, by express reference or by implication, that the legislative body intended to provide *any* benefit for a partially disabled person. The criteria in both sections speak in absolutes. The test is whether he can or cannot perform 'the duties of his job classification'. If he is ' "incapacitated" for the performance' of these duties, he may qualify for *either* ordinary or special benefits, but unless he is so incapacitated, he qualifies for neither." 51 Md.App. at 447, 443 A.2d at 663–64 (emphasis in original).

The court in *Taylor* concluded that the distinction between § 34(c) and § 34(e) lay in the criteria of eligibility for the pension:

> "[O]ne section allows tenured employees to retire when they are no longer able to perform their duties, while the other affords retirement benefits to those who suffer injuries in the performance of their hazardous jobs." 51 Md.App. at 449, 443 A.2d at 665.

Notwithstanding its recognition that the requisite degree of incapacity was the same for both § 34(c) and § 34(e), the court in *Taylor* held that a policeman was entitled to special disability benefits when he could no longer perform the rigorous duties of his job classification. 51 Md.App. at 448, 443 A.2d 657.

In *Adams v. Board of Trustees,* 215 Md. 188, 137 A.2d 151 (1957), the Court stated that its role in reviewing the

decision of an administrative agency is limited to a determination of whether the agency's decision was arbitrary or capricious. 215 Md. at 193–94, 137 A.2d at 154–55. Given this limited power of review, courts primarily determine whether the agency's conclusion either was supported by sufficient evidence, see *Board of Trustees v. Ches,* 294 Md. 668, 679, 452 A.2d 422, 427–28 (1982), and *Board of Trustees v. Rollins,* 269 Md. 722, 726, 309 A.2d 758, 760–61 (1973), or was based on an erroneous construction of the law, see *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250, 252–53 (1979), and *Director of Finance v. Alford,* 270 Md. 355, 363–64, 311 A.2d 412, 417 (1973). Obviously, in this case, the Court is concerned with whether the claims examiners have construed correctly the meaning of the word "incapacity" as it appears in Art. 22, §§ 34(c) and 34(e).

 We set forth a number of the rules for statutory construction in *Police Commissioner v. Dowling,* 281 Md. 412, 418–19, 379 A.2d 1007, 1010–11 (1977), giving citations for each of the statements there made. We summarize those rules now. The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly. Further, a court may not insert or omit words to make a statute express an intention not evidenced in its original form. Moreover, the legislative body is presumed to have had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law. Finally, absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. Similar expressions are found, among other cases, in *Hurst v. V & M of*

*Virginia,* 293 Md. 57.5, 578, 446 A.2d 55, 56–57 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 388–89, 444 A.2d 1024, 1027 (1982); *Rome v. Lowenthal,* 290 Md. 33, 41, 428 A.2d 75, 79 (1981); *Baltimore Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 15, 427 A.2d 979, 982 (1981); and *Department of State Planning v. Hagerstown,* 288 Md. 9, 14–15, 415 A.2d 296, 299 (1980).

From our earlier quotations of the statutes in question, which we placed in parallel columns for purposes of comparison, it will be noted that the following differences exist: the provision in § 34(e) relative to injury arising out of and in the course of actual performance of duty without willful negligence on the part of the officer, which it is conceded is met here, and the requirement in § 34(c) relative to prior service. The other difference between the two is that § 34(c) requires a determination that the individual is "mentally or physically incapacitated for the further performance of the duties of the member's job classification in the employ of Baltimore City" while § 34(e) requires a determination that the person is "totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City ...." Resolution of this case turns on whether the disparate language in the two sections mandates a different requisite degree of incapacity or merely a different source of disability.

The police officers point to the fact that § 34(g)(2) states:

"A disability retiree may, without reduction of his retirement allowance, earn annually an amount, hereinafter referred to as 'earnings,' equal to the rate of the annual compensation being paid currently to persons in the same grade and step as the retiree was at the time of his retirement, plus the amount of any longevity payments currently being paid for the length of service the retiree had at the time of his retirement, said rate of compensation plus longevity payments, if any, hereinafter referred to as 'base amount'."

The ordinance then goes on to provide the basis for reduction of the benefits once a given amount is earned. From this the officers argue that the legislative body contemplated that one drawing special disability benefits did not necessarily have to be incapable of performing every type of duty within a particular job classification.

The City contends that a member of the Police Employees' Retirement System, who is capable of performing some of the duties within his job classification, is not "totally and permanently incapacitated for the further performance of the duties of his job classification" so as to be entitled to special disability benefits. It notes that being a policeman is a multifaceted occupation and that a police officer still may be useful even though he is unable to perform every duty to which he might be assigned. In these cases, each officer is capable of performing desk or clerical duties and thus, it is argued, is not totally incapacitated within the meaning of the statute. On its face the statutory language of § 34(e) supports this position: the relevant modifier of incapacity is the word "totally" not the phrase "further performance of duties." Thus, the City contends one is totally incapacitated only if he cannot perform *any* of the duties that fall within the broad description of a police officer's job.

Before discussing the meaning of the term "incapacity" in the Baltimore City Code with respect to police officers who are able to perform light duty assignments only, it is necessary to delineate several factors which appear in the records of these cases. First, there is no evidence that any claimant was classified as other than a police officer while filling a light duty position. Second, the placement of these claimants on light duty apparently did not result in either a decrease in salary or a loss of seniority, as compared with other officers of comparable rank, grade, and seniority. Third, the claimants apparently were assigned to regular, full-time positions which would otherwise have been filled by officers capable of performing all duties within the job classification.

Because this Court has never addressed the question presented in these cases, a review of extrajurisdictional case law is instructive. Several state courts, most notably those of California, have determined that a police officer or firefighter is not incapacitated for the further performance of his duties if a permanent light duty position exists within his job classification. *See, e.g., Winslow v. City of Pasadena,* 34 Cal.3d 66, 665 P.2d 1, 3–4, 192 Cal.Rptr. 629, 631–632 (1983) (in bank); *Winn v. Board of Pension Comm'rs of Los Angeles,* 149 Cal.App.3d 532, 197 Cal.Rptr. 111, 117 (1983); *Thelander v. City of El Monte,* 147 Cal.App.3d 736, 195 Cal.Rptr. 318, 323 (1983); *Schrier v. San Mateo Co. Employees Retirement Ass'n,* 142 Cal.App.3d 957, 961, 191 Cal.Rptr. 421, 423 (1983); *Stuessel v. City of Glendale,* 141 Cal.App.3d 1047, 1051, 190 Cal.Rptr. 773, 776 (1983); *O'Toole v. Retirement Bd. of City & Co. of San Francisco,* 139 Cal.App.3d 600, 603, 188 Cal.Rptr. 853, 855 (1983); *Craver v. City of Los Angeles,* 42 Cal.App.3d 76, 79–80, 117 Cal.Rptr. 534 (1974); *Barber v. Retirement Bd.,* 18 Cal. App.3d 273, 278, 95 Cal.Rptr. 657 (1971); *Hubbard v. Pension Fund,* 150 Colo. 495, 498, 374 P.2d 492 (1962); *Peterson v. Board of Trustees,* 54 Ill.2d 260, 264, 296 N.E.2d 721 (1973); *Board of Trustees of Okla. City Police Pension & Ret. Sys. v. Clark,* 661 P.2d 506, 508–09 (Okla.1983); *Hoy v. Firemen's Pension Fund,* 540 P.2d 531, 532 (Wyo.1975).

One rationale underlying the determination that a person capable of performing sedentary duties is not incapacitated is that the continued employment of those handicapped as a result of work-related activities furthers public policy. *See, e.g., Craver,* 42 Cal.App.3d at 80, 117 Cal.Rptr. 534; *Barber,* 18 Cal.App.3d at 278, 95 Cal.Rptr. 657; *Clark,* 661 P.2d at 509. In addition, courts have reasoned that although unable to perform the more strenuous duties, disabled firefighters or policemen are capable of carrying out several of the necessary and useful tasks embodied in their job classification. Therefore, claimants who are able to perform some of the duties within the particular job classification cannot be considered incapacitated for the further

performance of their duties. *See, e.g., Tillman v. Sibbles,* 341 So.2d 686, 689 (Ala.1977); *Nuce v. Board of Trustees,* 246 So.2d 610, 611 (Fla.App.1971); *State ex rel. Russel v. Michaw,* 256 Ind. 459, 463, 269 N.E.2d 533 (1971); *Gary Fire Pension Bd. v. State ex rel. Travline,* 179 Ind.App. 618, 621, 386 N.E.2d 1009 (1979); *Braun v. Municipal Emp. Retirement System,* 355 So.2d 19, 20 (La.App.1977), *cert. denied,* 356 So.2d 1012 (La.1978); *Skulski v. Nolan,* 68 N.J. 179, 205–06, 343 A.2d 721 (1975); *Kinsey v. Adkins,* 157 W.Va. 375, 380, 201 S.E.2d 288, 292 (1973). Significantly, several courts have relied on the fact that the claimant in a particular case had not suffered a reduction in pay or a loss of seniority and rank as a result of being placed on light duty. *See, e.g., Winslow,* 34 Cal.3d 66, 192 Cal.Rptr. at 632, 665 P.2d at 4; *Stuessel,* 141 Cal.App.3d at 1054, 190 Cal.Rptr. 773; *Hubbard,* 150 Colo. at 498, 374 P.2d 492; *Michaw,* 265 Ind. at 464, 269 N.E.2d 533; *Ring v. Langdon,* 69 A.D.2d 998, 999, 416 N.Y.S.2d 137 (1979).

In contrast, some courts have determined that a police officer or firefighter who is able to perform some, but not all, of the duties of his job classification is incapacitated. *See, e.g., Butler v. Pension Bd. of the Police Dep't,* 259 Iowa 1028, 1033–34, 147 N.W.2d 27 (1966) (distinguished in *Reisner v. Board of Trustees,* 203 N.W.2d 812, 815 (Iowa 1973)); *Knight v. Board of Trustees,* 269 S.C. 671, 679, 239 S.E.2d 720, 723 (1977). The primary rationale of these courts is that the pension statutes are remedial in nature, having been enacted for the benefit of the employee-claimant. Therefore, a claimant who is unable to perform all of his ordinary duties is incapacitated and entitled to retirement benefits. *See, e.g., Knight,* 269 S.C. at 679, 239 S.E.2d at 723. Further, at least one court has held that the claimant is entitled to retirement disability benefits if, as a result of an injury arising out of or in the course of his employment, he is placed in a light duty position at a salary, rank, or seniority lower than he held prior to becoming disabled. *See Woodroof v. City of Nashville,* 29 Tenn.App. 426, 197 S.W.2d 4, 8 (1946).

A review of the out-of-state case law demonstrates that the majority rule is as follows: a policeman or firefighter who is capable of performing sedentary, nonrigorous tasks is not incapacitated for the further performance of the duties of his job classification. An apparent caveat to this rule is that the police or fire department, with which a particular claimant is employed, normally assigns its members to full-time, regular, light duty positions. Notwithstanding the prevailing interpretation of pension retirement laws in other states, it is incumbent upon us to determine the meaning of the term "incapacitated" in light of the Baltimore City Code.

We turn to dictionary definitions of the terms involved. Webster's New International Dictionary of the English Language 1255 (2d ed. 1959) defines "incapacitate":

"1. To deprive of capacity or natural power; to render incapable or unfit; to disable; disqualify; as, age *incapacitated* him for war. 2. *Law.* To deprive of legal requisites or qualification; to render legally incapable; to disqualify."

"Incapacity" is defined:

"Quality or state of being incapable; lack of physical or intellectual power, or of natural or legal qualification; inability; incapability."

"Incapable" is defined:

"1. Not capable; wanting in capacity, ability, or qualification for the purpose or end in view; incompetent; as, an *incapable* child; *incapable* of wrong or falsehood; specif.: ... e Not able or fit for the doing or performance (of some specified action); —now only with *of;* as, *incapable* of understanding the matter; *incapable* of doing the work.... Syn. —Unqualified, disqualified, inefficient. —INCAPABLE, UNABLE. *INCAPABLE commonly implies inherent or permanent lack of power to do or bear something;* UNABLE ordinarily suggests want of ability (whether permanent or temporary) to meet or perform a specific requirement or task; as, 'With this

weakness of health ... he was *incapable* of the prolonged contention of spirit necessary for the creation of great works.' (*M. Arnold*) ...." (All emphasis in the dictionary quotations is in the original except for the long phrase.)

Consideration of the above definitions reasonably brings us to the view that the word "totally" in § 34(e) is redundant. As used in § 34(e) an adjective such as "partially" or "temporarily" would have meaning when used with "incapacitated." It would indicate something less than the absolute term.

■ The Baltimore City Council has not qualified the word incapacitated in either § 34(c) or § 34(e). There is thus no indication that the requisite degree of incapacity for entitlement to disability benefits is anything less than total, notwithstanding the use of the phrase "mentally or physically incapacitated" in § 34(c) and the phrase "totally and permanently incapacitated" in § 34(e). Therefore, we conclude that the level of incapacity necessary to sustain a claim for disability benefits is the same for purposes of both provisions. The distinction in terms of eligibility between the two sections lies with the source of the injury which results in disability: if the injury arose out of or in the course of the actual performance of duty, then the claimant who is totally incapacitated is entitled to special disability benefits; if the injury was caused by any other means, then the claimant who is totally incapacitated is entitled to ordinary disability benefits.

Having reached this conclusion, it is clear that the claims examiners applied an incorrect legal standard for determining whether the police officers in these cases are incapacitated. The claims examiner in each case awarded the particular officer ordinary disability benefits because the officer was capable of performing some of the duties within his job classification. In other words, the claims examiners determined that because the officers were partially but not totally incapacitated, they were not entitled to special dis-

ability benefits. Thus, these cases must be remanded to the claims examiners for consideration under the proper definition of incapacitated.

Application of the correct legal standard alone, however, will not thoroughly resolve the issue before us. Indeed, there are several questions which must be answered. For example, is it in fact a practice of the Baltimore City Police Department to assign personnel to regular, permanent, full-time, light duty jobs which are within the job classification of police officer? Have the police officers assigned to such positions in the past been those with physical limitations, those who are completely physically fit, or both? Is each claimant in the cases before us assigned to such a position? Finally, is each claimant able to perform the duties of the position to which he has been assigned?

Given these questions, it is in our view appropriate to remand this case to the circuit court under Maryland Rule 871a. The rule states in pertinent part:

"If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the appropriate court. Upon remand to the appropriate court, such further proceedings shall be had by ... introduction of additional evidence, ... as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered...."

The circuit court should further remand. The claims examiners then not only shall apply the correct legal standard for the term "incapacitated," but also shall receive additional

evidence as necessary for resolving the questions we raised above.

REMANDED WITHOUT AFFIRMANCE OR REVERSAL PURSUANT TO THE PROVISIONS OF MARYLAND RULE 871a FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; APPELLANT TO PAY THE COSTS.