**In the Matter of Lee ANDERSON'S APPLICATION FOR DISABILITY BENEFITS.**

No. CX–90–2081.

Court of Appeals of Minnesota.

April 16, 1991.

Barry G. Reed, Zimmerman Reed, Minneapolis, for relator Anderson.

David R. Ornstein, City Atty., Sheila M. Happe, Asst. City Atty., Bloomington, for respondent Bloomington Fire Dept.

Joseph B. Nierenberg, Messerli & Kramer, Bloomington, for respondent Bloomington Fire Dept. Relief Assn.

Considered and decided by LANSING, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

HUSPENI, Judge.

Relator Lee C. Anderson seeks certiorari review of the Bloomington Fire Department Relief Association (BFDRA) decision denying his application for disability benefits. We affirm.

## FACTS

Relator is a volunteer firefighter in respondent Bloomington Fire Department and is a member of respondent BFDRA, a benevolent organization founded to provide disability, retirement, and death benefits to its members.

In May 1987, due to a cardiac condition, relator applied for disability benefits. According to association bylaws, a member of the relief association who becomes totally disabled during employment as a voluntary fireman is entitled to disability payments. The bylaws define "total disability" as:

Inability to perform the duties of a firefighter, in the opinion of a physician or physicians appointed by the Board of Trustees.

In reviewing relator's application, the relief association board of trustees considered medical opinions from five doctors before deciding that relator was not totally disabled and therefore not entitled to benefits.

The first physician, Dr. Thomas Layman, relator's cardiologist, originally opined that relator's heart condition prohibited him from safely undertaking the duties of a firefighter. Dr. Layman revised this opin-

ion in July 1987 to state that relator was capable of performing a restricted light duty assignment during the daytime hours. Beginning in the summer of 1987, the fire department placed relator on light duty assignment.[1]

During 1988–89, relator saw a licensed psychologist, Jay T. Gourlie. In a letter to the trustees, Dr. Gourlie wrote:

> It is my professional opinion that the situation is severely stressful to [relator] from a psychological perspective.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Furthermore, I believe recent research indicates that [relator's] psychological distress about his situation (especially the problems with the Bloomington Volunteer Fire Department) might increase his risk of physical problems related to his cardiac status.
>
> I emphatically recommend that [relator] be reclassified as 100% disabled with regard to his status at the Bloomington Volunteer Fire Department.

Upon receipt of Dr. Gourlie's opinion, the board requested that relator be examined by a board-selected psychiatrist. In response to the board's request, relator chose to see Dr. Gourlie's partner, Dean Knudson, a licensed psychiatrist. Dr. Knudson opined:

> It is my professional opinion that [relator's] continued presence in the Bloomington Fire House is severely stressful to [relator] from a psychiatric perspective. It is my clinical opinion that ongoing psychological stress related to his conflict with the Bloomington Volunteer Fire Department is a threat to his physical health. *I believe that the stress associated with this conflict is exacerbating his panic disorder and his cardiac disease.*
>
> *It is my professional opinion that [relator] should receive a 100% disabled classification with the Bloomington Volunteer Fire Department.* This classification is based upon his cardiac disease

and upon his functional psychiatric condition.

(Emphasis added.) The board asked Dr. Richard Lentz, a psychiatrist, and Dr. James Zavoral, a cardiologist, to examine relator. Dr. Lentz, after reciting his clinical observations, reached the following conclusions:

> In my opinion, it is difficult to find a reason psychiatrically why he cannot do light work. Neither the symptoms of panic attack nor those of mild low grade depression, nor his fears that he may die seem disabling to the point that he could not do light work. If there are some difficulties among his co-workers which could be addressed in a way he might view as more sensitive, that might help make the work situation easier. I recognize it is difficult to tell co-workers how to feel and act. He indicates to me that his own cardiologist, Dr. Nelson, believes that from a physical standpoint he can do light work as well. Although [relator] feels somewhat unfairly treated by the fact that *he is not considered 100% disabled, and is angry about that, I can find no clear psychiatric basis to support a reason why he cannot do light work.*

(Emphasis added.) Finally, after reviewing the opinions regarding relator's status, Dr. Zavoral opined:

> It would seem to me that he is clearly in a very difficult situation and *he is probably disabled, particularly with the stress involving his duties at the fire department from a cardiovascular as well as a mental standpoint.*

(Emphasis added.) Following an inquiry seeking clarification of Dr. Zavoral's opinion of relator's fitness to perform light duty, the doctor concluded:

> From a purely physical cardiovascular standpoint, *his cardiovascular limitations would not prevent him from performing [light duty] tasks.* As you

---

1. The association defines light duty as:
   Wipe down wet fire equipment with other fire fighters when trucks return to the station: time involved 5–7 minutes; or sit at desk and record the fire fighter's numbers that respond to the call on a record sheet and call the main station with the information; or wash dishes or windows.

mentioned; however, there are other difficulties that need to be addressed.

(Emphasis added.) In response to the medical opinions, the fire chief took steps to reduce stress in the workplace.

On May 22, 1990, relator attended a meeting of the board of trustees to seek review of the board's decision to deny benefits. Relator voluntarily appeared without counsel and agreed to submit the matter on the medical reports submitted to that date.

At the hearing, relator conceded that during the period of alleged disability he continued to work at Bachman's. He told the board that the job entailed caring for leased plants in office buildings. Relator admitted that he was occasionally called upon to lift weights of up to 45 pounds and do a limited amount of stair climbing. He stated, however, that he had not applied for disability benefits from Bachman's.

On July 31, 1990, the board issued its findings, conclusions and decision denying benefits. The detailed findings recite all of the medical testimony contained in the record and include the lengthy procedural history of the case. The board reasoned that relator was not totally disabled because he was capable of performing light duty tasks.

## ISSUE

Is the BFDRA board of trustees' decision supported by substantial evidence, based on an error of law, or arbitrary and capricious?

## ANALYSIS

■ "The BFDRA board of trustees acted in the nature of an administrative agency" when it rejected relator's application for disability benefits. *Nichols v. Borst,* 439 N.W.2d 432, 434 (Minn.App.1989).

Agency decisions are presumed correct by the court * * * and will be reversed only when they reflect an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence.

*Crookston Cattle Co. v. Minnesota Dep't of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980).

The Minnesota Supreme Court has defined "substantial evidence" as:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
2. More than a scintilla of evidence;
3. More than "some evidence";
4. More than "any evidence"; and
5. Evidence considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). When applying this test, the appellate court must consider the evidence in light of the entire record and "must affirm if the agency engaged in reasoned decision making." *In re Larkin,* 415 N.W.2d 79, 82 (Minn.App.1987).

The board considered five physician's opinions in deciding to deny benefits. Dr. Lentz, the board-appointed psychiatrist, Dr. Zavoral, the board-appointed cardiologist, and Dr. Layman, relator's cardiologist, stated that relator could work on light duty status. Relator correctly points out that the board also received opinions from Dr. Knudson, relator's psychiatrist, and Dr. Gourlie, relator's psychologist, that the fire department should classify relator as 100% disabled. Moreover, relator conceded that he continued to work at Bachman's, but had never requested disability leave from that position.

We recognize that the physicians differ as to the severity of relator's physical condition. However, the board resolved this factual conflict by finding that relator was able to continue working a light duty shift. It would be inappropriate for this court now to invade the province of the board by engaging in independent fact finding. *See Reserve Mining,* 256 N.W.2d at 825. Viewing the entire record, we conclude that substantial evidence supported the board's decision.

■ Next, relator argues that the board incorrectly interpreted the definition of "total disability" in denying benefits. The bylaws provide that benefits are only payable when a member is unable "to perform

the duties of a firefighter." Relator urges a very broad interpretation of the language arguing that he is entitled to benefits if he is unable to perform *all or the majority* of the duties of a firefighter. Respondents, in contrast, interpret the provision to mean that benefits are payable only if the claimant is unable to perform *any* of the duties of a fireman. Based on this interpretation, BFDRA held that since three medical opinions support the conclusion that relator is physically capable of performing light duty functions,[2] he is not totally disabled and therefore is not entitled to benefits. We find no error in BFDRA's decision.

First, Minn.Stat. § 423A.13 (1988) supports the assignment of relator to light duty status and the board's interpretation of the term "total disability." The statute provides in relevant part:

> Every city in which a local police or salaried firefighters' relief association is located shall make every reasonable attempt to provide less hazardous duty employment positions for marginally or less severely disabled police officers or firefighters * * * with the same compensation, fringe benefits and other terms and conditions of employment as the person would have otherwise received.

*Id.* Placing relator on light duty status comports with Minnesota public policy favoring the continued employment of less than totally disabled firefighters. Further, relator's interpretation of the definition would lead to the absurd result that a partially impaired firefighter would be classified as totally disabled.

Next, while Minnesota courts have not directly addressed whether a firefighter who is capable of performing light duty functions is sufficiently disabled to qualify for disability benefits, several state courts faced with this question have held that a firefighter or police officer is not incapacitated from the performance of her duties where a permanent light duty position is made available in her job classification. *See, e.g., Winslow v. City of Pasadena,* 34 Cal.3d 66, 71, 665 P.2d 1, 3–4, 192 Cal.Rptr. 629, 631–32 (1983) (en banc); *Hubbard v.*

*Pueblo Firemen's Pension Fund,* 150 Colo. 495, 498, 374 P.2d 492, 493 (1962) (en banc); *Russell v. Odum,* 154 Ga.App. 547, 548, 269 S.E.2d 27, 29 (1979), *cert. denied,* (Ga.1980); *Peterson v. Board of Trustees,* 54 Ill.2d 260, 264–65, 296 N.E.2d 721, 724 (1973); *Board of Trustees v. Clark,* 661 P.2d 506, 508–09 (Okla.1983); *Hoy v. Firemen's Pension Fund,* 540 P.2d 531, 532 (Wyo.1975). Other courts have held that as long as the firefighter or police officer is capable of performing some of the responsibilities of the job classification, he is not incapacitated. *See, e.g., Tillman v. Sibbles,* 341 So.2d 686, 689 (Ala.1977); *Nuce v. Board of Trustees,* 246 So.2d 610, 611 (Fla. App.1971); *State ex rel. Russel v. Michaw,* 256 Ind. 459, 463, 269 N.E.2d 533, 534–35 (1971); *Braun v. Municipal Emp. Retirement Sys.,* 355 So.2d 19, 20 (La.App.1977), *cert. denied,* 356 So.2d 1012 (La.1978); *Skulski v. Nolan,* 68 N.J. 179, 205–06, 343 A.2d 721, 735 (1975); *Kinsey v. Adkins,* 157 W.Va. 375, 380, 201 S.E.2d 288, 292 (1973). A small number of states would find incapacity where the firefighter or police officer is incapable of performing all of the duties of the position. *See, e.g., Butler v. Pension Bd.,* 259 Iowa 1028, 1033–34, 147 N.W.2d 27, 30 (1966); *Knight v. Board of Trustees,* 269 S.C. 671, 679, 239 S.E.2d 720, 723 (1977).

We find persuasive the rationale of those courts which comprise the majority and which find no eligibility for benefit payments if the employee is capable of performing light duty functions. The Court of Appeals of Maryland aptly summarized the majority position:

> a policeman or firefighter who is capable of performing sedentary, nonrigorous tasks is not incapacitated for the further performance of the duties of his job classification. An apparent caveat to this rule is that the police or fire department, with which a particular claimant is employed, normally assigns its members to full-time, regular, light duty positions.

*Mayor and City Council of Baltimore v. Hackley,* 300 Md. 277, 288, 477 A.2d 1174, 1180 (1984). Both *Hoy* and *Peterson* give

---

**2.** Neither party disputes that relator is unable to    work as a regular duty firefighter.

additional support to the majority position. In *Hoy*, 540 P.2d at 533, the Wyoming Supreme Court determined that a "light duty" firefighter was not entitled to disability benefits because the light duty (floor watch) had a substantial connection with fire prevention. Similarly, in *Peterson*, 296 N.E.2d at 724, the Illinois Supreme Court determined that an applicant with a heart condition who could no longer perform the regular duties of a firefighter was *not* entitled to a pension so long as he could work in the fire prevention bureau (a desk job). In both cases, the applicants' physicians certified that they were able to perform light duty.

In this case, the board's decision to place relator on light duty status was consistent with existing Minnesota statutes and a substantial and persuasive body of case law from other jurisdictions.

Finally, the board's conclusions were not arbitrary or capricious. This court will find an agency determination arbitrary or capricious only when the decision represents the agency's will and not its judgment. *Markwardt v. State Water Resources Bd.*, 254 N.W.2d 371, 374 (Minn. 1977). Here, the board considered each of the medical opinions and reached a reasoned resolution of relator's claim.

## DECISION

The BFDRA decision denying relator's claim for disability benefits was supported by substantial evidence, was not based on an error of law, and was neither arbitrary nor capricious.

Affirmed.