519 A.2d 1354

**William H. HACKLEY**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**Edward S. McCARTHY**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**James P. POSSIDENTE, Sr.**

v.

**MAYOR & CITY COUNCIL OF BALTIMORE, et al.**

**William T. WEDEMEYER**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

Nos. 568, 570, 571 and 771, Sept. Term, 1986.

Court of Special Appeals of Maryland.

Jan. 20, 1987.

Certiorari Denied June 4, 1987.

Michael Marshall (Sidney Schlachman, and Schlachman, Potler, Belsky & Weiner, P.A. on the brief), Baltimore, for appellants.

L. William Gawlik, Asst. Sol. (Benjamin L. Brown, City Sol. and Sheldon H. Press, Chief Sol. on the brief), Baltimore, for appellees.

Argued before ALPERT, WENNER, and POLLITT, JJ.

ALPERT, Judge.

We address here the consolidated appeals of four police officers (hereinafter occasionally referred to as "claimants") whose applications for special disability retirement benefits pursuant to Article 22, Section 34(e) of the Baltimore City Code were denied.[1] The single issue presented by these cases may be succinctly stated:

Is a police officer who is capable of performing light duty specially assigned to officers injured in the line of duty, "incapacitated for the further performance of the duties of his job classification?"

I. *Procedural Background and City of Baltimore v. Hackley, 300 Md. 777 (1984).*

Claimants, William Hackley, William Wedemeyer, James Possidente and Edward McCarthy were employed as police officers with the Baltimore City Police Department. Each sustained an injury in the line of duty, which injury was not caused by the wilfull negligence of the officer. Claimants were unable to return to their duties as patrolmen because of their injuries. All four, however, were certified by police physicians for "light duty" within the department and, while performing those duties, carried their weapons and retained full powers of arrest. Additionally, no claimant received a reduction in pay or grade and all were carried on police rosters as "patrolmen" or "foot patrol." Claimants Hackley and Wedemeyer performed clerical work, claimant

---

1. That section reads:

Special disability benefits. Any member who has been determined by the claims examiner to be totally and permanently incapacitated for the further performance of the duties of his job classification in the employ of Baltimore City, as the result of an injury arising out of and in the course of the actual performance of duty, without wilful negligence on his part, shall be retired by the Board of Trustees on a special disability retirement.

Balt.City Code, Art. 22, § 34(e) (1976 Ed., 1979 Supp.).

Possidente dispatched police cruisers from the department's communications center, and claimant McCarthy worked as a gunsmith in the police department's armory.

Claimants retired[2] and in 1981, filed applications for special disability benefits with the Board of Trustees of the Fire and Police Employees Retirement System (hereinafter, "the Board"). Each asserted that, though able to perform light duty, his injury prevented him from performing the more rigorous duties associated with police work. Therefore, each claimant argued that he was incapacitated from performing "the duties of his job classification" within the meaning of the special disability benefit provisions. Claimants' applications were heard by special examiners in the spring of 1981. In each case, an examiner found that the claimant was capable of performing sedentary duties required of police officers. Therefore, the examiners held in each case that the claimant had failed to prove by a preponderance of the evidence that he was incapacitated for the performance of the duties of his job classification. Accordingly, claimants' applications for special benefits were denied. Each claimant was awarded instead "ordinary benefits" pursuant to § 34(c) on the assumption that such benefits are appropriate where an officer is partially, rather than totally, incapacitated. The officers appealed these determinations to what is now the Circuit Court for Baltimore City. In each case, that court reversed the decision of the claims examiner. The cases were consolidated for appeal, and the Court of Appeals granted certiorari.

Without reversal or affirmance, the Court of Appeals remanded the cases to the hearing examiner pursuant to Rule 871 a. *City of Baltimore v. Hackley,* 300 Md. 277, 477 A.2d 1174 (1984). The court held that the examiners had applied an incorrect standard for the term "incapacitated." Under the correct standard, benefits may be awarded

---

**2.** Hackley worked on light duty for approximately 6 years, Wedemeyer for about a year, Possidente for about 2½ years and McCarthy for twenty-three years.

pursuant to either § 34(c) or (e) only upon a showing of *total* incapacitation. *Id.* at 289, 477 A.2d 1174. The court then adopted the majority rule governing incapacitation for cases in which the claimant has been assigned to light duty: a police officer who is capable of performing sedentary, non-rigorous tasks is not incapacitated for the further performance of the duties of his job classification. *Id.* at 288, 477 A.2d 1174. The court noted, however, that this rule applies only to those cases in which the police department that employed the claimant normally assigns its members to full-time, regular, light duty positions. *Id.* Pursuant to Rule 871 a, the court expressed the purpose for its remand:

> The claims examiners then shall not only apply the correct legal standard for the term "incapacitated" [*i.e., total* incapacitation] but shall also receive additional evidence as necessary for resolving the questions we raised above.

*Id.* at 290–291, 477 A.2d 1174. Those questions were:

> [I]s it in fact a practice of the Baltimore City Police Department to assign personnel to regular, permanent, full-time, light duty jobs which are within the job classification of police officer? Have the police officers assigned to such positions in the past been those with physical limitations, those who are completely physically fit, or both? Is each claimant in the cases before us assigned to such a position? Finally, is each claimant able to perform the duties of the position to which he has been assigned?

*Id.*

Although the court did not indicate how the resolution of these questions fit into the broader task of determining whether claimants were totally incapacitated from further performing their duties, the relationship between the two is apparent. If the light duties to which claimants were assigned have, through custom or practice, become "duties within the job classification of police officer," claimants are incapacitated with the meaning of § 34(e) only if they are unable to perform the light duties to which they were assigned. Thus, by resolving the four questions above, the

examiners would also be applying the majority rule adopted by the court.

On remand, the hearing examiners determined that, in each case, the claimant had again failed to establish that he was incapacitated for the further performance of the duties of his job classification. Accordingly, all four claimants were denied special disability benefits. The Circuit Court for Baltimore City affirmed the decisions of the Board. This appeal followed.

The scope of our review in resolving these appeals is narrowly defined. Our duty is to determine whether the decisions of the Board were arbitrary or capricious. *Adams v. Bd. of Trustees*, 215 Md. 188, 193–94, 137 A.2d 151 (1957). An arbitrary or capricious administrative determination cannot stand. If the conclusion reached in each of these cases, *i.e.*, that the claimant is not incapacitated within the meaning of § 34(e), is supported by sufficient evidence, *see Bd. of Trustees v. Rollins*, 269 Md. 722, 309 A.2d 758 (1973) and is based upon a proper construction of the law, *see Frank v. Baltimore County*, 284 Md. 655, 399 A.2d 250 (1979), the conclusion is neither arbitrary nor capricious.

The law which governs this case are those points finally decided by the Court of Appeals in the first appeal. Rule 871 a. *See generally Fidelity-Baltimore Nat'l v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 372, 142 A.2d 796 (1958) (once the Court of Appeals has ruled on a question, that ruling is binding on the litigants and courts in subsequent appeals of that case). We shall review the Board's determinations in these cases in the manner in which they were remanded to it.

II. *Determinations of Hearing Examiners*

A. *Practice of the Baltimore City Police Department in Assigning Light Duties Within the Classification of Police Officer*

Testimony offered at all four hearings established that it is the practice of the Baltimore City Police Department to

assign personnel to regular, permanent, full-time light duty jobs. Major Joseph A. Bolesta, commanding officer of the Northwestern District, testified that permanent limited duty jobs were created with the full knowledge of his supervisors. Detective Lieutenant John Fuller indicated that the same practice exists at the Northeastern District also with the knowledge of supervisors. At Officer Possidente's hearing, (retired) Major Theodore I. Weintraub testified:

> Almost universally, communication centers within a police department or fire department, for that matter, is a place to send your sick and lame.... When someone cannot function on the street and you still want to take "care of the man," and you give him a job, invariably, you send him to a communications center. Not just in Baltimore City, Baltimore County and throughout the United States.

The light duties assigned to claimants were also "within the job classification of police officers." The Civil Service Commission job description was introduced at claimants' original hearings "to demonstrate the nature and extent of the job classification of a police officer." *Hackley*, 300 Md. at 279–280 n. 1, 477 A.2d 1174. It states in pertinent part:

### GENERAL DEFINITION

> This is law enforcement work at the full performance level. Work involves maintaining order and protecting life and property in keeping with the responsibilities, policies and procedures of the Baltimore City Police Department.
>
> \*     \*     \*     \*     \*     \*
>
> Work requires strenuous physical activity, working in dangerous situations and in all weather conditions. Shift work on a rotating basis is normally required.
>
> TYPICAL EXAMPLES OF WORK (illustrative only)
>
> Patrols an assigned post to prevent and discover the commission of crime and to enforce traffic regulations; responds to calls and complaints; takes necessary action at the scene of a crime or disturbance including maintain-

ing order, gathering evidence, protecting crime scenes; locates witnesses, and makes arrests; conducts investigations; obtains information through personal interviews; maintains service equipment; testifies in court; maintains good personal appearance; delivers summonses and subpoenas; completes a variety of narrative and fill-in forms; attends roll call and scheduled in-service training sessions; may act as sergeant in latter's absence; performs related work as required.

The examples of work contained in this job description are all "duties of [claimants'] job classification." We are careful to note, however, that these "examples" are not exhaustive and, as the Court of Appeals intimated, they may be supplemented by practice or custom.

Officers Hackley and Wedemeyer were assigned essentially identical light duties following their line-of-duty injuries. These duties may be described generally as clerical and included completing crime reports, answering telephone calls from the public, maintaining crime statistics, pinning the location of certain crimes on a city map, sorting tickets and filing papers. Of these tasks, completing crime reports is a "typical example of work" within claimants' job classification. The balance of these tasks, which Major Bolesta indicated were "important to the conduct of the police department," may fairly be called "related work" to those duties enumerated in Service Commission job description.[3] Testimony established that Officer Possidente's radio dispatching is a job of particular importance in the police department and clearly related to the more general duty of his job classification to "respond[ ] to calls and complaints."

---

**3.** Claimant Hackley offered testimony through Major Bolesta that the duties assigned to him could easily be performed by civilians. The fact that civilians are capable of completing police reports, handling complaints over the telephone, preparing crime statistics, etc. does not take these tasks out of the Civil Service job description. The examples of work contained in that job description remain "duties within [claimants'] job description" notwithstanding the fact that the work might also be performed by civilians from time to time.

Finally, as a gunsmith, Officer McCarthy "maintain[ed] service equipment."

■ The examiners' unanimous conclusion that the Baltimore City Police Department regularly assigns personnel to full-time light duties within the classification of police officer is fully supported by competent testimony.

B. *Physical Condition of Officers Assigned to Light Duty*

When the Court of Appeals remanded these cases, it directed the examiners to determine whether

police officers assigned to such positions in the past [have] been those with physical limitations, those who are completely physically fit, or both?

300 Md. at 290, 477 A.2d 1174. The court did not indicate how this question fits into the overall determination of whether claimants are incapacitated for the further performance of the duties of their job classification. A review of the authority relied upon by the court in adopting the majority rule indicates the following: if the tasks to which a claimant is assigned have, in the past, been given to physically fit officers, those tasks are likely to be considered within the duties of the claimants' job classification notwithstanding a policy of assigning the same tasks to physically impaired officers. *See Hoy v. Firemen's Pension Fund*, 540 P.2d 531 (Wyo.1975); *Hubbard v. Pueblo Firemen's Pension Fund*, 150 Colo. 495, 374 P.2d 492 (1962); *Stuessel v. City of Glendale*, 141 Cal.App.3d 1047, 190 Cal.Rptr. 773 (1983). Cases not relied upon in *Hackley* also support this interpretation. *See, e.g., Brown v. Regan*, 112 A.D.2d 570, 491 N.Y.S.2d 505 (A.D.3d Dept.1985).

In the cases at bar, testimony presented to the hearing examiners established that both physically fit and physically impaired officers are assigned to the job of dispatcher. No witness could recall whether the gunsmiths who preceded Officer McCarthy were physically fit although he was replaced by a healthy officer. On the other hand, no physical-

ly fit officer has ever been assigned the clerical positions assumed by Officers Hackley and Wedemeyer. Indeed, the testimony established that their jobs were created for permanently physically limited officers.

While these facts lend additional support to the examiners' conclusions that the light duty assigned to Officers Possidente and McCarthy are within the duties of their job classification, the fact that tasks performed by Hackley and Wedemeyer have never been performed by physically fit officers does not invalidate the examiners' conclusion that those positions were also within the claimants' job classification. We have already indicated that Hackley's and Wedemeyer's light duties were specifically within the Civil Service Commission's job description. The examiners' conclusion merely receives no *additional* support from the fact that the clerical positions were specially created for physically impaired officers.[4]

The light duties to which claimants were assigned are within their job classification.

### C. *Is the claimant assigned to "such a position?"*

The parties agree that all four claimants were assigned to nonrigorous, sedentary "light duties."

### D. *Is claimant able to perform the light duties assigned to him?*

In each of the four cases before us, the examiner concluded that the claimant was capable of performing the light

---

**4.** A different result might follow if claimants had been assigned, for example, building maintenance tasks clearly outside of the Civil Service Commission's job description to which no healthy officers had previously been assigned. Obviously, as a merely illustrative list of "examples of work" within claimants' job classification, the Civil Service Commission's description is not exhaustive. The duties of claimants' job classification also include those tasks which are, as a matter of custom and practice, regularly assigned to physically fit officers.

duties assigned to him. In each case, the claimant challenges that conclusion.

### (a) *Officer Hackley*

Officer Hackley's line-of-duty injury causes his knees to "lock up" and to "give way." He complains that his knees frequently "swell up" and "radiate a lot of heat." Major Bolestra testified that Officer Hackley has "trouble walking at times."

A physician who examined claimant concluded that he was "not nearly completely disabled." Another physician certified Officer Hackley, pursuant to a permanent limited duty capability report, for the clerical duties assigned to him. Finally, when asked whether claimant was "capable of doing the job," Major Bolestra, his supervisor, responded "yes." The record also indicates that Officer Hackley continued to perform his light duty assignment as of the date of his last hearing.

### (b) *Officer Wedemeyer*

Officer Wedemeyer suffers from a back injury. He has undergone a diskectomy and an anterior cervical spine fusion as a result of injuries suffered in the line of duty. He testified that his back condition prevented him from doing light duties.

Wedemeyer was examined by five police physicians who concluded that he could function in the permanent limited duty position to which he had been assigned. The record indicates the following exchange in the course of Lt. John Fuller's testimony:

HEARING EXAMINER KULL: And Officer Wedemeyer performed these duties, answering the phones, pinning maps, and my question is, could be perform those duties?

THE WITNESS: Yes, sir, I thought he did them very well as a matter of fact.

HEARING EXAMINER KULL: Did you have occasion to rate him?

THE WITNESS: Yes, sir.

HEARING EXAMINER KULL: How did you rate him, if you recall?

THE WITNESS: I believe I rated him excellent.

Since his retirement, Officer Wedemeyer has worked as a daytime security guard at a large hotel and, currently, as a part-time postal clerk. At his current job, claimant lifts packages, the heaviest of which weigh "15 to 20 pounds."

### (c) *Officer Possidente*

Officer Possidente suffers from shoulder and back pains. He stated that he was unable to work in communications because these pains precluded him from sitting in his dispatcher's seat.

Despite these complaints, the record shows that shortly after retiring from the police force, Possidente took a job monitoring closed circuit screens in an "internal security" capacity. In this new job, which Possidente had held on a full-time basis for 6 months as of the date of his hearing, claimant "mostly sit[s]." As for his performance as a police dispatcher, Possidente's supervisor testified, "[t]here was no question about his ability to do the work."

### (d) *Officer McCarthy*

Finally, Officer McCarthy testified that back pains caused by his line-of-duty injury prevented him from performing his light duty assignment.

That testimony notwithstanding, the record clearly indicates that McCarthy was unable to perform only one task associated with his assignment: the lifting of heavy ammunition boxes. Indeed, his supervisor rated McCarthy as one of the best gunsmiths in Maryland for the 23 years he performed that specialized duty. After retiring from the force, Officer McCarthy continued to work part-time as a gunsmith for Smith and Wesson. In that capacity, McCarthy testified, he repairs many more guns than he did for the police department. Although he indicated that shortly before retiring, his condition was "going downhill," elsewhere McCarthy testified that when he retired his condition was

about the same as when he began light duties 23 years earlier. The record not only indicates that McCarthy was able to perform his duties as gunsmith, the record shows that he was "one of the best," "an expert" at that job.

III. *Conclusion*

Substantial evidence presented to the hearing examiners supports the Board's conclusion in each of these cases that the claimant was not incapacitated for the further performance of the duties of his job description. The light duty tasks to which claimants were assigned were duties within the job description of Baltimore City Police Officer. In each case, the claimant failed to demonstrate by a preponderance of the evidence that he was incapable of performing the tasks assigned to him. In keeping with the rule adopted in *Hackley,* 300 Md. at 288, 477 A.2d 1174, these claimants were properly denied special disability retirement benefits.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.