625 A.2d 398

**Charles T. WRIGHT**

v.

**BALTIMORE COUNTY, Maryland.**

**No. 1610, Sept. Term, 1992.**

Court of Special Appeals,
of Maryland.

June 4, 1993.

Damon A. Trazzi (Trazzi & Grasso, on brief), Timonium, for appellant.

James A. Helfman, Asst. County Atty. (H. Emslie Parks, County Atty., on brief), Towson, for appellee.

Argued before BISHOP, GARRITY and CATHELL, JJ.

CATHELL, Judge.

Appellant, Charles T. Wright, appeals from the Circuit Court for Baltimore County's affirmance of the Board of Appeals' decision of February 25, 1992, that

no evidence exists in this record that ... prevents him from being a useful police officer even though he is unable to perform every duty to which he might be assigned. He is capable of performing desk or clerical functions which are of use to the Police Department, and therefore within the duties to be performed by a police officer.

He posits three questions:

I.    Did the Board of Appeals apply an erroneous legal standard to the determination of disability under *City of Baltimore v. Hackley*?

II.   Is there any substantial evidence to support the Board's finding that Detective Wright's disability is not permanent?

III.  Did the Board of Appeals err in finding that Detective Wright does not have a physical disability meeting the requirements of section 23–56 of the Baltimore County Code?

We answer no to the first and third questions and yes to the second question and shall affirm. We shall first address the necessary facts.

## Facts

This is but the latest chapter in appellant's attempt to be declared permanently disabled for pension purposes. He first applied for disability retirement in 1987. The Board of Appeals denied his application, and he appealed to the circuit court, which remanded the case back to the Board. The remand order was appealed to this Court. We affirmed in an unreported opinion. *Wright v. Baltimore County,* 78 Md.App. 704, 724 [No. 1168, 1988 Term, per curiam filed Feb. 13, 1989]. On remand, the Board again denied his request for a disability pension.

Appellant subsequently reapplied for disability retirement in 1990. The Board found that Wright suffered from hypertension and that the condition precluded a return by him to his normal, previous duties. It found, however, that he was capable of performing the desk and clerical functions to which he had been assigned. Therefore, he was capable of fulfilling the duties of a police officer. The Board further found that there was medical evidence that his hypertension was susceptible to control through appellant's compliance with treatment programs. It then concluded, based on the medical evidence, that he was "not permanently physically incapacitated for the performance of duty." Therefore, he was not entitled to disability retirement.

Its decision was subsequently affirmed by the circuit court and this appeal taken.

## Standard of Review

We recently reiterated the standard of review in a disability case arising out of findings with respect to a Baltimore City police officer's claim of disability.

The substantial evidence standard of review requires only that the reviewing court examine the agency's decision to determine whether reasoning minds could reasonably reach that conclusion by direct proof or by permissible inference from the facts and the record before the agency. In determining whether reasoning minds could reasonably reach the conclusion, we must view the Commission's decision in a light most favorable to it. The Commission's decision should be viewed as "prima facie correct" and it carries with it the presumption of validity. This Court may not substitute its judgment for the expertise of the Commission. [citations omitted]

*Terranova v. Board of Trustees,* 81 Md.App. 1, 8, 566 A.2d 497 (1989), *cert. denied,* 319 Md. 484, 573 A.2d 808 (1990) (quoting *Vavasori v. Commission on Human Relations,* 65 Md.App. 237, 251, 500 A.2d 307 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986)).

## I

## Interpretation of the Holding of *City of Baltimore v. Hackley* [1]

■ Appellant posits that the *Hackley* Court held that in determining the existence of disability the agency must answer four questions:

1) Is it in fact a practice of the Baltimore City Police department to assign personnel to regular permanent full time light duty jobs within the job classification of police officer; 2) Have the police officers assigned to such positions in the past been those with physical limitations, those who are completely fit, or both; 3) Is the claimant assigned to such a position; and 4) Is the claimant able to perform the duties of the position to which he has been assigned.

He then argues that because the first two questions have not been properly answered in the case *sub judice* the Board's position is not supported by substantial evidence.

Appellee argues that

the four (4) questions posed by the Court are appropriate guidelines for consideration by a judicial or quasi-judicial body, but they clearly do not constitute "requirements" or "prerequisites" or a "test" of any sort. Moreover, they obviously do not constitute some sort of four-prong "*Hackley* test" for accidental disability determinations as has been suggested by Appellant.

As such, Appellant's statement that "the Board's conclusion is legally unsupported" is untenable for the simple reason that there is no legally mandated "test for disability" which the Board must address.

The Court of Appeals stated the majority rule as follows: "a police officer ... is not incapacitated for the further performance of his duties if a permanent light duty position exists within his job classification." *Hackley*, 300 Md. at 286, 477

---

1. 300 Md. 277, 477 A.2d 1174 (1984), *appeal after remand*, 70 Md.App. 111, 519 A.2d 1354, *cert. denied*, 309 Md. 605, 525 A.2d 1075 (1987).

A.2d 1174. The Court of Appeals described the basis of the majority rule as the furtherance of public policy as it relates to the continued employment of the handicapped. It noted further that the majority rule posited that "claimants who are able to perform some of the duties within the particular job classification cannot be considered incapacitated for the further performance of their duties." *Hackley*, 300 Md. at 286–87, 477 A.2d 1174.

We do not have to look far to find the answer as to whether the majority rule was adopted by the Court of Appeals. We have already addressed this issue in *Hackley v. City of Baltimore*, 70 Md.App. 111, 519 A.2d 1354, *cert. denied*, 309 Md. 605, 525 A.2d 1075 (1987). We there interpreted the Court of Appeals' holding as follows:

> Under the correct standard, benefits may be awarded ... only upon a showing of *total* incapacitation. *The Court then adopted the majority rule governing incapacitation for cases in which the claimant has been assigned to light duty: a police officer who is capable of performing sedentary, non-rigorous tasks is not incapacitated for the further performance of the duties of his job classification....* [T]his rule applies only to those cases in which the police department ... normally assigns its members to full-time, regular, light duty positions.

*Hackley*, 70 Md.App. at 114–15, 519 A.2d 1354 (citations omitted, emphasis added). We then noted:

> If the light duties ... have, through custom or practice, become "duties within the job classification of police officer," claimants are incapacitated with[in] the meaning of § 34(e) *only* if they are unable to perform the light duties ... assigned.

*Hackley*, 70 Md.App. at 114–15, 519 A.2d 1354 (emphasis added). As we have indicated, the Court of Appeals denied certiorari. More recently, we have reaffirmed our interpretation of *Hackley* in *Biscoe v. Baltimore City Police Department*, 96 Md.App. 1, 623 A.2d 666 (1993). Chief Judge Wilner, speaking for the Court, stated:

By virtue of the two *Hackley* cases, it seems clear that an officer who is assigned to a light duty position with the Department and who is capable of performing the duties of that position is not "totally and permanently incapacitated for the further performance of the duties of his job classification" and is therefore not entitled to either an ordinary disability retirement under § 34(c) or a special disability retirement under § 34(e). It is also apparent that such light duty positions are full-time, not part-time, positions, requiring that the officer work a full shift five days a week.

*Biscoe,* 623 A.2d at 669.

In his brief, Wright himself asserts that his unit is staffed entirely by officers who are physically or mentally unfit. It is clear that the telephone reporting unit, and/or communications unit, though staffed with officers serving there on a temporary basis, is a permanent unit of the police department, *i.e.,* it was not created just to provide a light duty assignment for appellant. Appellant testified below that he had been assigned "[f]rom Homicide to fugitive. From fugitive to the telephone reporting unit to the MSID computer section to public safety building, [back] to telephone reporting unit to the communications division." Appellant testified that the telephone unit had responsibilities of a permanent nature taking reports over the telephone and "responsible for the public safety, building security...." He proffered that "light duty is my permanent assignment basically.... [F]ive of those years ... I have been a report taker, a security guard, a telephone answering machine...." It is clear to us that the units to which he was assigned and of which he complains are "within the job classification of police officers."[2] *Hackley,* 70 Md.App. at 117, 519 A.2d 1354. "[T]hese 'examples' [of police work] are not exhaustive and ... they may be supplemented by practice or custom." *Hackley,* 70 Md.App. at 118, 519 A.2d 1354.

---

**2.** We have been furnished with no formal job classification. The police department concedes that *assignments* to the units described are temporary in nature, not permanent, though the positions are permanent.

In *Hackley,* we went on to opine:

[N]o physically fit officer has ever been assigned the clerical positions.... [T]heir jobs were created for permanently physically limited officers.

While these facts lend additional support ... that the light duty assigned ... are within the duties of their job classification, the fact that [the] tasks ... have never been performed by physically fit officers does not invalidate the examiners' conclusion that those positions were also within the ... job classification.

*Hackley,* 70 Md.App. at 119–20, 519 A.2d 1354. We ultimately held:

[T]he claimant was not incapacitated for the further performance of the duties of his job description. The light duty tasks ... were duties within the job description of Baltimore City Police Officer. In each case, the claimant failed to demonstrate by a preponderance of the evidence that he was incapable of performing the tasks assigned to him.

*Hackley,* 70 Md.App. at 123, 519 A.2d 1354.

■ Before concluding our discussion of this issue, we note that, in his brief and at oral argument, appellant stressed the "permanent" provision of the first question in the Court of Appeals' *Hackley,* arguing to us that the fact that the Baltimore City Police Department had permanent positions and the Baltimore County Police Department did not was a distinction that required a different conclusion in the case *sub judice.* According to appellant, at least as we perceive his argument, the position in Baltimore City is "permanent" because police officers may not be reassigned to other positions unless they agree to the reassignment. Presumably appellant deduces that, because in Baltimore County an officer may be reassigned without his agreement, the position is not "permanent." Appellant confuses the permanency of the assignment with the permanency of the position. While the nature of assignments may differ, the Baltimore City and Baltimore County positions were permanent. *Hackley* was concerned with the permanency of the positions, not the permanency of the assignments.

To the extent that usage of the word "permanent" in the Court of Appeals *Hackley* means anything other than that such a position may not be created on a temporary basis to keep an alleged incapacitated employee from disability retirement, it relates to the permanency of the position. In other words, the position must be a regular necessary position involving any normal police function that is regularly staffed by police officers, partially incapacitated or not. The Baltimore County system fully satisfies the four questions of the *Hackley* opinion. It is thus clear that the *Hackley* standard was properly addressed by the Board and the trial court. We perceive no error. We now turn to appellant's second question.

## II

### Did the Board err in finding that Wright's disability is not permanent?

Dr. McLean, the medical director of the Baltimore County Employees Health Service, testified, in part, as to three evaluations she had made of appellant in 1986, and in February and July of 1991. She testified that Wright failed to cooperate in treating the condition and in the monitoring of his condition. Dr. McLean opined that hypertension is generally a treatable condition and because Wright would not cooperate with treatment methodology, she was unwilling to recommend disability retirement. Dr. McLean was then asked, "[D]o you feel he's permanently incapacitated?" She responded, "No, I don't."

On cross-examination, she testified that while Wright's hypertension was permanent, "I don't believe he's incapacitated by virtue of that hypertension." She recited several times in different forms that in her opinion Wright was *not incapacitated*.

Additionally, even some of the medical evidence submitted by Wright could create inferences that his condition is either not totally incapacitating and/or not permanent. Dr. Antlitz at one point admits "[t]he patient could continue his activities

as a police officer if the blood pressure could be adequately controlled." Dr. Lisle opines, in part, "Back in the fall when he was on light duty, his blood pressures were within an acceptable range...."

In *Terranova*, 81 Md.App. at 13, 566 A.2d 497, we quoted from *Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 399, 396 A.2d 1080 (1979):

[A]ssume that in an agency hearing five witnesses testify on one side ... and one witness testifies on the other. In its findings, the agency [relies] ... on the testimony of the one witness and disregard[s] that of the five. Under the substantial evidence rule, a court would be required to uphold such findings.

Thus, generally, we look only to that evidence supporting the agency decision to see if it, standing alone, is sufficient. There is medical testimony that, standing alone, would support the agency's finding in the case at bar.

Applying the standards of administrative review, we find no reversible error in the agency's, nor the trial court's, treatment in regard to the second question raised on appeal.

### III

### Did the Board err in finding no physical disability pursuant to Section 23–56 of the Baltimore County Code?

Section 23–55 of the Baltimore County Code (1988) provides in pertinent part:

[A]ny member who has been totally and *permanently incapacitated* for duty ... shall be retired ... provided that the Medical Board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent.... [Emphasis added.]

Section 23–56 in pertinent part provides:

[A]ny condition or impairment of health ... caused by ... hypertension *resulting in permanent physical disability*

... shall be presumed to have been suffered in the course of and arising from his employment.... [Emphasis added.]

These sections in combination merely provide that if an officer is found to be *permanently incapacitated for duty* as a result of hypertension, then that condition, *i.e.*, permanent incapacity, is presumed to have been suffered in the course of his/her employment. The provisions of section 23–56 are not applicable unless the officer is first found to be permanently incapacitated. The agency declined to make that threshold finding based on the evidence before it.

Appellant argues in his brief that in determining whether this problem was physical, the Board had previously "decided in 1989 that [his] condition satisfied § 20–22.1 (subsequently renumbered as § 23.56)...."

Appellant misinterprets the statute and misstates what the Board said. The Board there found:

[T]here is no doubt that Officer Wright does have hypertension.... The testimony also indicates that this elevation was created by his extremely stressful duty in the narcotics division. This [hypertension caused in line of duty] then qualifies Officer Wright ... *for consideration* to be granted a disability pension.... Section 20–22, however, clearly states that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty. There is no doubt that [his] hypertension prohibits his return to the narcotics division. There is, however, no testimony or evidence that would preclude his return to other less stressful normal police duties. [Emphasis added.]

If the determinative dispute was whether Officer Wright suffers from hypertension or whether it is, in his case, a physical condition, appellant's argument might have some merit. As to those matters there is little dispute. Appellee's position, sustained by the Board, both in 1989 and presently, is that he is not "totally and permanently incapacitated" for duty. The trial court affirmed the findings of the Board. For the reasons we have stated, we affirm the trial court.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-PELLANT.